# STATE OF CONNECTICUT *v.* EMMANUEL B. SMITH, JR.
## (AC 23977)

Bishop, McLachlan and Gruendel, Js.

Argued January 4—officially released March 7, 2006

*Norman A. Pattis,* for the appellant (defendant).

*Melissa Streeto Brechlin,* assistant state's attorney, with whom, on the brief, were *David I. Cohen,* state's attorney, and *Steven G. Weiss,* supervisory assistant state's attorney, for the appellee (state).

*Opinion*

McLACHLAN, J. The defendant, Emmanuel B. Smith, Jr., appeals from the judgment of conviction, rendered after a jury trial, of possession of narcotics in violation of General Statutes § 21a-279 (a). On appeal, the defendant claims (1) that there was insufficient evidence to support the jury's verdict, (2) that the trial court improperly failed to conduct an in camera review of an arresting police officer's personnel file and (3) that the court improperly instructed the jury to harmonize the evidence. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. Larry Eisenstein, Douglas Robinson and Wayne

Scuteri are Stamford police officers experienced in narcotic and organized crime investigations. On the morning of August 26, 1998, Eisenstein received information from a confidential informant that two individuals intended to transport crack cocaine to a public housing project at 186 Greenwich Avenue[1] in Stamford. Earlier that day, the informant, a drug user, had been in the company of the defendant, whose name he did not know, and a woman named Marlene. While the informant was in the presence of these two individuals, he overheard them discuss a quantity of crack cocaine that they planned to take to 186 Greenwich Avenue that day. The informant told Eisenstein that the pair would be in a blue Oldsmobile Cutlass bearing Connecticut license plate 679 MBX, operated by the defendant. The informant described the defendant as a black male, who was more than six feet tall, weighing more than 200 pounds, dressed in a black T-shirt, blue jeans and white sneakers. Eisenstein knew the informant well, having worked with him for a number of years, and depended on him to provide credible and reliable information.

The officers established surveillance of 186 Greenwich Avenue. Eisenstein and Robinson were in an undercover van parked in a public parking lot across the street from 186 Greenwich Avenue. Scuteri was in an undercover sedan in a nearby parking lot. The officers communicated via radio. At approximately 12:15 p.m., Eisenstein saw a man fitting the description of the male provided by the informant exit 186 Greenwich Avenue and approach a blue Oldsmobile Cutlass with license plate 679 MBX in the building's parking lot. The man opened the driver's door with a key and reached down to the floor of the driver's side of the vehicle. Eisenstein ordered Scuteri to drive into the parking lot of 186 Greenwich Avenue and intercept the defendant. The defendant saw Scuteri enter the parking lot.

[1] The parties stipulated that 186 Greenwich Avenue is public housing.

Although Scuteri was dressed in plain clothes and operating an unmarked vehicle, the defendant recognized him as a police officer from previous, unrelated encounters. The defendant ran toward adjacent premises. Scuteri exited his vehicle, identified himself as a police officer and told the defendant to stop. The defendant disregarded the order and kept running. Scuteri returned to his vehicle and pursued the defendant. Eisenstein and Robinson also followed the defendant in their vehicle. The officers cornered the defendant, who resisted arrest. After the officers subdued the defendant, they conducted a patdown search and found $93 and a pager on his person. Eisenstein seized the key to the Oldsmobile that was in the defendant's hand.

Eisenstein used the key to open the Oldsmobile. Under the driver's floor mat, Eisenstein found a cellophane wrapper containing eleven small ziplock bags. On the basis of his professional experience and training, Eisenstein believed that the bags contained crack cocaine. Subsequent field and laboratory testing confirmed that the bags contained crack cocaine. A Fleet Bank statement was in plain view on the front passenger's seat. Scuteri used the key to open the glove compartment and found a checkbook and register, bank deposit slips and transaction receipts. Scuteri seized all of the bank documents, which bore the defendant's name and address.[2]

The Oldsmobile was registered to Andre Dozier. Marlene told the officers that the defendant had used the Oldsmobile to transport her from Stillwater Avenue to 186 Greenwich Avenue that day.

[2] The defendant filed a motion to suppress the crack cocaine seized by the officers, challenging the sufficiency of the information from the informant to establish probable cause and claiming that there were no exigent circumstances to justify the warrantless search of the Oldsmobile. The motion was granted, and the charges were dismissed. Our Supreme Court reversed the judgment of dismissal. See *State* v. *Smith*, 257 Conn. 216, 777 A.2d 182 (2001).

The defendant was charged with possession of narcotics in violation of § 21a-279 (a), possession of narcotics with intent to sell by a person who is not drug-dependent in violation of General Statutes § 21a-278 (a) and possession of narcotics with intent to sell within 1500 feet of public housing in violation of General Statutes § 21a-278a (b). After the state presented its case, the defendant moved for a judgment of acquittal, which was denied. He presented no evidence. The jury found him guilty of possession of narcotics,[3] and he was sentenced to seven years incarceration. This appeal followed.

I

The defendant's first claim is that there was insufficient evidence to support his conviction of possession of narcotics in violation of § 21a-279 (a),[4] and that the court improperly denied his motions for a judgment of acquittal and a new trial. The defendant argues that he was not in exclusive control of the area where the narcotics were found and that no one saw him touch the narcotics or otherwise acknowledge that he knew that narcotics were in the Oldsmobile. We disagree.

"In reviewing a sufficiency of the evidence claim, we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . The scope of our fac-

---

[3] The jury found the defendant not guilty of possession of narcotics with intent to sell by a person who is not drug-dependent and possession of narcotics with intent to sell within 1500 feet of public housing.

[4] General Statutes § 21a-279 (a) provides in relevant part: "Any person who possesses or has under his control any quantity of any narcotic substance, except as authorized in this chapter . . . may . . . be both fined and imprisoned . . . ."

tual inquiry on appeal is limited. This court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict. . . . [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. . . . The rule is that the jury's function is to draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . . In this process of review, it does not diminish the probative force of the evidence that it consists . . . of evidence that is circumstantial rather than direct." (Emphasis in original; internal quotation marks omitted.) *State* v. *Estrada*, 71 Conn. App. 344, 350, 802 A.2d 873, cert. denied, 261 Conn. 934, 806 A.2d 1068 (2002).

"[T]o prove illegal possession of a narcotic substance, it is necessary to establish that the defendant knew the character of the substance, knew of its presence and exercised dominion and control over it. . . . Where . . . the [narcotics were] not found on the defendant's person, the state must proceed on the theory of constructive possession, that is, possession without direct physical contact. . . . One factor that may be considered in determining whether a defendant is in constructive possession of narcotics is whether he is in possession of the premises where the narcotics are found. . . . Where the defendant is not in exclusive possession of the premises where the narcotics are found, it may not be inferred that [the defendant] knew of the presence of the narcotics and had control of them, unless there are other incriminating statements or circumstances tending to buttress such an inference. . . . To mitigate the possibility that innocent persons might be prosecuted for . . . possessory offenses . . . it is essential that the state's evidence include more than just a temporal and spatial nexus between the

defendant and the contraband. . . . While mere presence is not enough to support an inference of dominion or control, where there are other pieces of evidence tying the defendant to dominion and control, the [finder of fact is] entitled to consider the fact of [the defendant's] presence and to draw inferences from that presence and the other circumstances linking [the defendant] to the crime." (Citation omitted; internal quotation marks omitted.) *State* v. *Davis*, 84 Conn. App. 505, 510–11, 854 A.2d 67, cert. denied, 271 Conn. 922, 859 A.2d 581 (2004).

On the basis of our review of the record, we conclude that there was sufficient circumstantial evidence to support the jury's finding that the defendant was in constructive possession of narcotics. The confidential informant told Eisenstein that the defendant was going to take a quantity of crack cocaine to 186 Greenwich Avenue on the day in question. The defendant exited 186 Greenwich Avenue and opened the driver's side door of an Oldsmobile with a key in his possession. He reached down to the floor in front of the operator's seat and locked the door before walking away. The defendant fled at the sight of a police officer whom he recognized. The jury reasonably could have found that the defendant had control of the Oldsmobile because his personal banking records were in the glove compartment of the vehicle at the time of his arrest. The substance in the bags found on the floor of the Oldsmobile where the defendant was seen reaching was crack cocaine. The court, therefore, properly denied the defendant's motions for a judgment of acquittal and a new trial.

## II

The defendant's second claim is that the court improperly denied his motion for an in camera review of the personnel files of one of the police officers who

testified at trial. On appeal, the defendant contends that the court should have reviewed Eisenstein's personnel files to determine whether his transfer from the police department's narcotics unit to another unit was the result of manpower needs or something more. The defendant's argument lacks the hallmarks of materiality and relevance necessary to prevail on a request for an in camera review of personnel records.

"We review the court's conclusion that the defendant was not entitled to an in camera review of the confidential documents pursuant to our standard of review for the court's evidentiary rulings. . . . The trial court has wide discretion in its rulings on evidence and its rulings will be reversed only if the court has abused its discretion or an injustice appears to have been done." (Citations omitted; internal quotation marks omitted.) *State* v. *William B.*, 76 Conn. App. 730, 758, 822 A.2d 265, cert. denied, 264 Conn. 918, 828 A.2d 618 (2003). "[W]e must make every reasonable presumption in favor of the trial court's action." (Internal quotation marks omitted.) *State* v. *Colon*, 272 Conn. 106, 263, 864 A.2d 666 (2004), cert. denied, 546 U.S. 848, 126 S. Ct. 102, 163 L. Ed. 2d 116 (2005).

The following additional facts are relevant to our review of the defendant's claim. Prior to trial, the defendant subpoenaed the personnel records of the police officers who were expected to testify. In response, the state filed a motion in limine, objecting to the admission into evidence of the officers' personnel records. The state cited *State* v. *Rodriguez*, 37 Conn. App. 589, 610–11, 658 A.2d 98, cert. denied, 234 Conn. 916, 661 A.2d 97 (1995), in support of its motion and argued that the defendant sought to conduct a fishing expedition in the personnel files of the officers. The court granted the motion in limine without prejudice to the defendant, thus allowing the defendant to make a showing that

the officers' files contain information material and relevant to the case or to the officers' credibility.

During cross-examination of Eisenstein, defense counsel established that one month prior to his testifying in this case, Eisenstein left the narcotics unit and returned to the patrol unit of the police department. Eisenstein answered "yes" to defense counsel's question concerning whether any complaints had ever been filed against him while he was in the narcotics unit. Defense counsel then asked Eisenstein to describe the nature of the complaints that had been filed. The state objected to the question on the ground of relevance. The court excused the jury and heard arguments from counsel. The state argued that complaints were irrelevant to the issues in this case. Defense counsel argued that the only testimony against the defendant came from police officers, who testified in part about a struggle with the defendant. Defense counsel also argued that he had not been permitted to review their personnel files to determine whether complaints had been lodged against them regarding misuse of evidence, brutality or misconduct. The court sustained the state's objection, noting that defense counsel had not offered a reason why evidence of complaints against Eisenstein were relevant and material.[5] On appeal, the defendant claims that the court improperly refused to review Eisenstein's personnel file in camera.[6]

"Generally, personnel files are exempt from disclosure as public records under General Statutes § 1-15 et

---

[5] The court stated its reasons for sustaining the objection: "Just for the reason that you haven't offered a reason why it might be relevant and material. And as to the ground that there has been evidence that the defendant fled from the officers, I don't know of any rule that says every time there is evidence that a defendant engages in flight, that opens up the personnel records of the officers who are trying to apprehend the suspect."

[6] The defendant conceded in his brief that the subpoena of the personnel files of all of the police officers was a fishing expedition.

seq., more commonly known as the Freedom of Information Act (act). . . . In enacting the act, the legislature sought to balance the public's right to know against private needs for confidentiality. . . .

"In criminal cases, however, the defendant's request for disclosure implicates a more significant right, that of a criminal defendant to impeach the witnesses who testify against him. . . . It is this right of the defendant that is involved in determining whether the information in the [officer's personnel file], otherwise exempt under the act, should have been disclosed to the defendant by the court. . . . The competing interests of the witnesses in confidentiality and the defendant's right to confront the witnesses against him must be balanced." (Citations omitted.) *State* v. *Rodriguez*, supra, 37 Conn. App. 610.

Our Supreme Court has held that disclosure of information in a police officer's personnel file must be carefully tailored to a legitimate and demonstrated need for such information in any given case. *State* v. *Januszewski*, 182 Conn. 142, 172, 438 A.2d 679 (1980), cert. denied, 453 U.S. 922, 101 S. Ct. 3159, 69 L. Ed. 2d 1005 (1981). "It is well settled in this state that before a criminal defendant may obtain an in camera inspection of a witness' confidential records for purposes of impeachment, he or she must first demonstrate that there is a *reasonable ground to believe that the failure to produce the information is likely to impair the defendant's right of confrontation such that the witness' direct testimony should be stricken.*" (Internal quotation marks omitted.) *State* v. *Ortiz*, 252 Conn. 533, 557, 747 A.2d 487 (2000). We conclude in this case that the court properly declined to conduct an in camera review of Eisenstein's personnel records because the defendant failed to make a specific showing that the records contained information that was material and relevant to the issues in the case, including Eisenstein's credibility.

## III

The defendant's third claim is that the court lowered the state's burden of proof by charging the jury to "harmonize the evidence as far as it reasonably can be done" because that language exhorts the jury to focus on the consistencies among the witnesses' testimony. We are not convinced.

The defendant failed to preserve his claim by either filing a request to charge or taking an exception to the instruction given by the court; see *State* v. *Ramos*, 261 Conn. 156, 169–70, 801 A.2d 788 (2002); and seeks to prevail under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). We will review the defendant's claim because the record is adequate for our review, and the claim is of a constitutional nature. The defendant cannot prevail, however, because the alleged constitutional violation did not clearly exist, and he clearly was not deprived of a fair trial.[7]

---

[7] The state argues that the defendant waived any challenge to the court's instruction. See *State* v. *Cooper*, 38 Conn. App. 661, 667, 664 A.2d 773 (claims waived at trial are not reviewable), cert. denied, 235 Conn. 908, 665 A.2d 903 (1995), cert. denied, 517 U.S. 1214, 116 S. Ct. 1837, 134 L. Ed. 2d 940 (1996). The state contends that during the charging conference, the court informed counsel that it would use standard jury instructions found in D. Borden & L. Orland, 5 Connecticut Practice Series: Connecticut Criminal Jury Instructions (2d Ed. 1997). There is no record of the charging conference. The court, however, summarized the charging conference on the record. In its brief on appeal, the state represents that at page 103 of the trial transcript, the court summarized, in part, that it would read "typical boilerplate from Borden's and Orland's Connecticut Criminal Jury Instructions."

Our review of that particular page of the transcript discloses that the court stated: "I will give an instruction on direct and circumstantial evidence as to determining intent and determining knowledge. I will give an instruction on both actual and constructive possession. And as I said before, I may use all or part of Borden and Orland, all or part of the Connecticut selected jury instructions, criminal, that is, on the charge of possession of narcotics." Nowhere in the court's summary do we find a reference to the charge to be given on assessing the truth of a witness' testimony. We conclude, therefore, that although the defendant did not preserve his claim at trial, he did not waive the right to raise it on appeal.

The following standard of review applies to the defendant's claim. "The principal function of a jury charge is to assist the jury in applying the law correctly to the facts which [it] might find to be established . . . . When reviewing [a] challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety . . . and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is . . . whether it fairly presents the case to the jury in such a way that injustice is not done to either party . . . . In this inquiry we focus on the substance of the charge rather than the form of what was said not only in light of the entire charge, but also within the context of the entire trial. . . . Moreover, as to unpreserved claims of constitutional error in jury instructions, we have stated that under the third prong of *Golding*, [a] defendant may prevail . . . only if . . . it is reasonably possible that the jury was misled . . . ." (Internal quotation marks omitted.) *State* v. *Carpenter*, 275 Conn. 785, 864–65, 882 A.2d 604 (2005).

The language with which the defendant takes issue appears in that portion of the court's instruction concerning the credibility of witnesses in general.[8] Specifi-

[8] The court charged the jury in that regard as follows: "I want to discuss the subject of credibility, by which I mean the believability of testimony. You have observed the witnesses sitting here. The credibility, the believability of the witnesses and the weight to be given to their testimony are matters entirely within your hands. It is for you alone to determine their credibility. Whether or not you find a fact proven is not to be determined again by the number of witnesses testifying for or against it. It is the quality, not the quantity, of testimony that should be controlling. Nor is it necessarily so that because a witness testifies to a fact and no one contradicts it, you are bound to accept that fact as true. The credibility of the witness and the truth of the facts are for you to determine.

"In weighing testimony of the witnesses, I want you to consider the probability or improbability of their testimony. You should consider their appearance, conduct and demeanor while testifying in court and any interest, bias, prejudice or sympathy which a witness may apparently have for or against the state or the accused or in the outcome of the trial. That is for you to determine.

cally, the defendant claims, the following language used by the court in its instruction lowered the standard of proof: *"You should harmonize the evidence as far as it reasonably can be done.* You should use all your experience, your knowledge of human nature and of the motives which influence and control human conduct, and you should test the evidence against that knowledge."* (Emphasis added.) As the state points out, the challenged language is found verbatim in D. Borden & L. Orland, 5 Connecticut Practice Series: Connecticut Criminal Jury Instructions (2d Ed. 1997) § 3.4,

"With each witness, you should consider his ability to observe facts correctly, recall them, and relate them to you truly and accurately. You should consider whether and to what extent witnesses needed their memories refreshed while testifying. You should, in short, size up the witnesses and make your own judgment as to their credibility and decide what portion—all, some or none—of any particular witness' testimony you will believe, based on these principles. *You should harmonize the evidence as far as it can reasonably be done.* You should use all your experience, your knowledge of human nature and of the motives that influence and control human conduct, and you test the evidence against that knowledge.

"In short, I want you to bring to bear upon the testimony of the witnesses the same considerations and use the same sound judgment you apply to questions of truth and veracity as they present themselves to you in everyday life. You are entitled to accept any testimony which you believe to be true and to reject, either wholly or in part, the testimony of any witness you believe has testified untruthfully or erroneously. The credit that you will give to the testimony offered, is, as I have told you, something which you alone must determine.

"Where a witness testifies inaccurately and you either do or do not think that the inaccuracy was consciously dishonest, you should keep that in mind and scrutinize the whole testimony of that witness. The significance you attach to it may vary more or less, but the particular fact as to which the inaccuracy existed or with the surrounding circumstances—you should bear in mind that sometimes people simply forget things. On the other hand, if a witness has intentionally testified falsely, you may disregard the witness' entire testimony, but you are not required to. It is up to you to accept or reject all or any part of any witness' testimony. If you find that a witness has been inaccurate in one respect, remember, in judging the rest of his testimony, give to it that weight which your own mind leads you to think it ought to have, and which you would attach to it in the ordinary affairs of life, where someone came to you in a matter and you found that in some particular he was inaccurate." (Emphasis added.)

Accepting Truth of Testimony, pp. 128–29.[9] The defendant has challenged a single sentence in the court's lengthy instruction that explains to the jury how to evaluate the credibility of a witness.

"To determine whether an error in a charge constitutes reversible error, the court must consider the whole charge. . . . In considering the charge as a whole, we eschew critical dissection . . . thereby not passing upon the instructions attacked in artificial isolation from the whole charge. . . . The charge must be considered from the standpoint of its effect on the jury in guiding [it] to a proper verdict." (Internal quotation marks omitted.) *State* v. *Santiago*, 17 Conn. App. 273, 279, 552 A.2d 438 (1989).

The detailed credibility instruction that was given in this case also was given in *State* v. *Ceballos*, 266 Conn. 364, 832 A.2d 14 (2003). In *Ceballos*, the trial court's judgment was reversed on the ground of prosecutorial misconduct; id., 417; and the majority did not review the credibility instruction. In dissenting from the majority's decision on the issue of prosecutorial misconduct, Associate Justice Peter T. Zarella, however, reviewed the instruction. He concluded that the detailed credibility instruction, the same one at issue here; see id., 438 n.9 (*Zarella, J.,* concurring in part and dissenting in

---

[9] Section 3.4 provides in relevant part: "With each witness, you should consider his ability to observe facts correctly, recall them, and relate them to you truly and accurately. You should consider whether and to what extent witnesses needed their memories refreshed while testifying. You should, in short, size up the witnesses and make your own judgment as to their credibility and decide what portion—all, some or none—of any particular witness' testimony you believe based on these principles. *You should harmonize the evidence as far as it can reasonably be done.* You should use all your experience, your knowledge of human nature and of the motives which influence and control human conduct, and you should test the evidence against that knowledge." (Emphasis added.) D. Borden & L. Orland, supra, § 3.4, pp. 128–29.

part); "advised the jurors of their duty to assess the credibility of the witnesses. Thereafter, the court delivered a more detailed instruction in which it advised the jurors at least five different times of their duty to determine the credibility of the witnesses, the factors to be considered in determining whether a witness has testified truthfully and the importance of bringing the jurors' own personal experience to bear on such a determination." Id., 437–38. Contrary to the defendant's argument, the court's instruction did not exhort the jury to focus on the consistencies between and among the witnesses, but on how to discern inconsistencies and problems within the testimony of an individual witness, particularly when only the state offers evidence and there is conflict in that evidence.

In the present case, it is not reasonably possible that the statement misled the jury. The investigating police officers testified as to the events underlying the defendant's conviction. The defendant presented no evidence at trial and, on appeal, has not referred to any contradictory testimony that had to be harmonized for the jury to find him guilty of possession of narcotics. For that reason, the defendant cannot satisfy the third prong of *Golding*.[10]

The judgment is affirmed.

In this opinion the other judges concurred.

[10] To be sure, the bare statement to "harmonize the evidence as far as it can reasonably be done," in and of itself could mislead a jury, particularly when only the state offers evidence and there is conflict in the testimony, which was not the case here.