## STATE OF CONNECTICUT *v.* JOHN B. SITARAS
### (AC 27675)

Flynn, C. J., and DiPentima and Lavine, Js.

Argued September 19, 2007—officially released March 25, 2008

*Glenn T. Terk*, with whom, on the brief, was *Katherine L. Matthews*, for the appellant (defendant).

*John A. East III*, senior assistant state's attorney, with whom, on the brief, were *James E. Thomas*, former state's attorney, and *Lisa Herskowitz*, senior assistant state's attorney, for the appellee (state).

*Opinion*

LAVINE, J. The unfortunate facts of this case demonstrate that it is impermissible to interfere with a peace officer performing his or her duties, even if one believes that the officer is mistaken or improperly used a pretext to execute an arrest warrant. See General Statutes (Rev. to 2003) § 53a-167a (a);[1] see also *State* v. *Aloi*, 280 Conn.

[1] General Statutes (Rev. to 2003) § 53a-167a (a) provides: "A person is guilty of interfering with an officer when such person obstructs, resists, hinders or endangers any peace officer or firefighter in the performance of such peace officer's or firefighter's duties."

824, 834, 911 A.2d 1086 (2007) ("§ 53a-167a broadly proscribes conduct that hinders, obstructs or impedes a police officer in the performance of his or her duties irrespective of whether the offending conduct is active or passive").

The defendant, John B. Sitaras, appeals from the judgment of conviction, rendered after a jury trial, of interfering with an officer in violation of § 53a-167a (a). On appeal, the defendant claims that (1) there was insufficient evidence by which the jury reasonably could have found that he interfered with an officer, (2) the court improperly instructed the jury, and (3) he was denied the right to a fair trial due to prosecutorial impropriety. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts from the evidence presented. On August 26, 2005, Joseph Ficacelli of the East Hartford police department was on routine patrol when he observed a motorist take a shortcut through private property. While checking on the vehicle's registration, Ficacelli learned that there was an outstanding warrant for the arrest of the owner of the vehicle that had been issued by the Plainville police department.[2] Ficacelli stopped the vehicle, which was owned by the defendant, and identified the defendant's son as the operator. Ficacelli decided to use a ruse to arrest the defendant[3] and borrowed the son's cellular telephone to call the defendant. Ficacelli told

[2] The Plainville arrest warrant stemmed from a check that was returned for insufficient funds. At sentencing in this case, in response to a comment from the court regarding his ability to balance his checkbook, the defendant reluctantly explained that notice of the dishonored check was withheld from him by a member of his family who suffers mental health problems. When the defendant learned of the debt, he paid it immediately. The prosecutor later entered a nolle prosequi with respect to the bad check charge.

[3] At trial, Ficacelli testified that the ruse was necessary to ensure the safety of all involved and to spare the arrestee the embarrassment and humiliation that could result from being arrested in the presence of family and friends.

the defendant that they needed to meet so that Ficacelli could discuss a stolen vehicle report the defendant had filed.[4] Ficacelli and the defendant agreed to meet at the parking lot of Mayberry School. Ficacelli then radioed fellow officer Patrick Sullivan, who was on patrol near the school, and asked him to help take the defendant into custody.

Sullivan, wearing his uniform and operating a marked police vehicle, arrived at the school at approximately 6:20 p.m. Ficacelli had not yet arrived. Sullivan did not know why an arrest warrant had been issued for the defendant or by which jurisdiction. When the defendant saw Sullivan enter the parking lot, he waved to him and engaged Sullivan in cordial conversation. Sullivan asked the defendant if he knew there was an outstanding warrant for his arrest. The defendant responded with astonishment, which Sullivan interpreted as a warning signal. The defendant explained to Sullivan that he had come to the school to talk to Ficacelli about a stolen vehicle report and that there must be some mistake about the warrant. The defendant produced his operator's license when Sullivan asked for it. As a result of the defendant's protestations, Sullivan decided to confirm the arrest warrant to ensure that a mistake had not been made. Sullivan asked the defendant to sit in the back of the police vehicle while he radioed for confirmation of the warrant. The defendant refused to get into the vehicle, telling Sullivan that the officer had "no right to put him back there" and that he did not "need to be back there."

---

[4] The defendant previously had filed a stolen vehicle report, thus lending credence to Ficacelli's ruse. See *United States* v. *Alejandro*, 368 F.3d 130, 137 (2d Cir.) (search warrant), cert. denied, 543 U.S. 907, 125 S. Ct. 224, 160 L. Ed. 2d 184 (2004), quoting *Leahy* v. *United States*, 272 F.2d 487, 490 (9th Cir. 1959) ("[t]here is no constitutional mandate forbidding the use of deception in executing a valid arrest warrant"), cert. dismissed, 364 U.S. 945, 81 S. Ct. 465, 5 L. Ed. 2d 459 (1961).

In response, Sullivan initially did not compel the defendant to sit in the vehicle but radioed for confirmation of the warrant while the defendant stood within earshot. When Sullivan received confirmation of the warrant, he asked the defendant to turn around and put his hands behind him. According to Sullivan, the defendant became angry, belligerent and refused to comply. He protested loudly that the police had made a "mistake," he was "the wrong person," "there's no way I should be getting arrested," and, "I'm not going to do it."

Sullivan feared for his safety as the defendant, who was larger than Sullivan, became more agitated. Sullivan grabbed the defendant's arm in an attempt to turn him around and put on the handcuffs. The defendant resisted, tensing his muscles and backing away. He ignored all of Sullivan's verbal commands. Sullivan then saw Ficacelli enter the parking lot. Assured that help was on the way, Sullivan executed a takedown of the defendant by hooking his leg behind one of the defendant's and using body leverage to throw the defendant to the ground. The defendant resisted, but Sullivan was able to turn him onto his stomach. The defendant continued to resist until Ficacelli informed him that he would use a chemical spray. The defendant then permitted the officers to handcuff him and take him into custody. He was cooperative thereafter. The defendant was charged with interfering with an officer.

As his defense, the defendant asserted that he never attempted to flee or physically resist arrest. He admitted, however, that he did not enter the police vehicle at Sullivan's request. The defendant described Sullivan as curt, unreasonable and overzealous. According to the defendant, when Sullivan told him that he was under arrest, he simply, but politely, told Sullivan that there must be some mistake and suggested that they wait for Ficacelli to arrive. When Sullivan saw Ficacelli arrive,

Sullivan suddenly and without provocation threw the defendant to the ground. The defendant was under the impression that Sullivan was trying to impress Ficacelli and earn arrest points with the police department. The defendant claimed that if Ficacelli had been forthright with him from the beginning, he would have met the officer at police headquarters to discuss the arrest warrant.

After the jury found the defendant guilty of interfering with an officer, the court sentenced him to one year in prison, execution suspended after thirty days, followed by a year of probation. The court also imposed special conditions requiring the defendant to make a $500 contribution to the Brian Aselton Fund, a $500 contribution to the Sarah McDermott Scholarship Fund, to perform 100 hours of community service and undergo anger management counseling.[5] The defendant timely appealed.

I

The defendant's first claim is that there was insufficient evidence to support his conviction of interfering with an officer. More specifically, the defendant argues that there was no evidence that he physically prevented Sullivan from arresting him and that verbal statements and nonphysical refusal to comply with an officer's directive does not constitute a violation of § 53a-167a. We disagree.

A claim of insufficient evidence implicates the constitutional right not to be convicted on inadequate proof. *State* v. *Morgan*, 70 Conn. App. 255, 281, 797 A.2d 616, cert. denied, 261 Conn. 919, 806 A.2d 1056 (2002). We review this claim first as it may be dispositive of the

---

[5] Although it appears that the defendant has completed his sentence, his appeal is not moot. The defendant may be subject to collateral legal disabilities imposed as a matter of law because of the conviction. See *Barlow* v. *Lopes*, 201 Conn. 103, 112–13, 513 A.2d 132 (1986).

appeal; see *State* v. *Padua*, 273 Conn. 138, 179, 869 A.2d 192 (2005); because a defendant convicted on insufficient evidence cannot be retried without violating the double jeopardy clause. See *Burks* v. *United States*, 437 U.S. 1, 18, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978).

"The standard of review we apply to a claim of insufficient evidence is well established. In reviewing the sufficiency of the evidence to support a criminal conviction we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"We note that the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, [but] each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Lopez*, 280 Conn. 779, 808, 911 A.2d 1099 (2007).

The relevant language of § 53a-167a (a) is, "when such person obstructs, resists, hinders or endangers" the officer in the performance of his or her duties. In support of his claim, the defendant relies on language from this court's decision in *State* v. *Aloi*, 86 Conn. App. 363, 373, 861 A.2d 1180 (2004), rev'd in part on other grounds, 280 Conn. 824, 911 A.2d 1086 (2007), namely,

"[a] reasonable and natural construction of the terms 'obstruct,' 'resist,' 'hinder' and 'endanger' reveals that they do not proscribe being verbally defensive or voicing mere declaratory statements, but proscribe some act that imposes an obstacle that may impede, hinder, prevent or substantially delay the performance of the officer's duties."[6]

Although the defendant admitted that he told Sullivan that there must be some mistake concerning the arrest warrant, that he had the wrong man and that he did not obey Sullivan's order to get into the police vehicle, he vigorously denied that he physically resisted Sullivan's attempt to arrest him. According to Sullivan, however, the defendant refused to turn around and put his hands behind his back when ordered to do so, and contrary to the defendant's version of events, the defendant tensed up, pulled away from him and would not put his hands behind his back after Sullivan had executed a takedown. The issue of whether the defendant physically resisted Sullivan's attempt to arrest him was the principal issue at trial. Indeed, the state prosecuted the defendant on the theory that he physically resisted Sullivan and specifically requested that the court give the standard jury charge; see J. Pellegrino, Connecticut Selected Jury Instructions: Criminal (3d Ed. 2001) § 2.44; concerning resisting arrest by physical force, which is applicable to General Statutes § 53a-23.[7]

---

[6] The state notes that the defendant conceded that he questioned Sullivan about the arrest warrant and argues that verbal and physical conduct may hamper an officer pursuant to State v. Aloi, supra, 280 Conn. 824. We take judicial notice that our Supreme Court's decision in Aloi was issued approximately one year after trial. We conclude that there was evidence before the jury by which it could have found that the defendant hindered Sullivan in the performance of his duties other than by mere declaratory statements.

[7] General Statutes (Rev. to 2003) § 53a-23 provides: "A person is not justified in using physical force to resist an arrest by a reasonably identifiable peace officer, whether such arrest is legal or illegal."

When the court charged the jury, it stated, in part: "[T]here are four words describing the ways interference may be committed. *Obstructs* means to interpose obstacles or impediments; to hinder, impede or in any manner intrude or prevent. This word and its definition does not necessarily imply the employment of direct force or the exercise of direct means. *Resist* means to impose by direct, active forcible, quasi-forcible means. *Hinder* means to make slow or difficult the progress of. It means to hold back, to delay, impede or prevent action. *Endanger* means to expose to danger or harm. The state need only prove that the defendant committed one of these forms of interference." (Emphasis added.)

We do not know what facts the jury found because jury interrogatories are not part of our criminal procedure. See, e.g., *State* v. *Lewis*, 46 Conn. App. 691, 696, 700 A.2d 722, cert. denied, 243 Conn. 944, 704 A.2d 799 (1997). There is no dispute, however, that the defendant did not get into Sullivan's vehicle when asked to do so. Sullivan testified that the defendant refused to turn around and put his hands behind his back after he confirmed the outstanding arrest warrant. The defendant disputes that Sullivan asked him to turn around and put his hands behind his back. The jury, however, not the court, is the arbiter of credibility; *State* v. *Russell*, 101 Conn. App. 298, 316, 922 A.2d 191, cert. denied, 284 Conn. 910, 931 A.2d 934 (2007); and was free to determine whom to believe.

On the basis of our review of the evidence and the court's charge, we conclude that the jury reasonably could have found that the defendant refused to enter Sullivan's vehicle when ordered to do so or that the defendant refused to turn around and put his hands behind his back. The jury reasonably could have inferred that either one of the defendant's refusals to obey Sullivan delayed the officer in the performance of his duties in effecting the defendant's arrest. We

therefore conclude that the defendant was not convicted by means of insufficient proof.

## II

The defendant's second claim is that the court improperly instructed the jury by (1) usurping the jury's fact-finding province and (2) failing to instruct the jury that mere declaratory statements do not constitute interference or obstruction under § 53a-167a.[8] The defendant failed to preserve this claim at trial and asks that we reverse his conviction pursuant to *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989).[9] We will review the defendant's claim because the record is adequate for our review and the claim is of a constitutional nature. See *State* v. *Smith*, 94 Conn. App. 188, 198, 891 A.2d 974, cert. denied, 278 Conn. 906, 897 A.2d 100 (2006). We conclude that a constitutional violation clearly did not exist.

It is beyond question that a criminal defendant has a constitutional right to have a jury determine his guilt or innocence. See *State* v. *Gore*, 96 Conn. App. 758, 766, 901 A.2d 1251, cert. granted on other grounds, 280 Conn. 937, 910 A.2d 218 (2006). "The principal function of a jury charge is to assist the jury in applying the law correctly to the facts which [it] might find to be established . . . and therefore, we have stated that a charge

---

[8] Because we resolve the defendant's claim on the basis of the undisputed evidence as to his nonverbal behavior, we need not reach the second part of his claim.

[9] Pursuant to *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

must go beyond a bare statement of accurate legal principles to the extent of indicating to the jury the application of those principles to the facts claimed to have been proven." (Internal quotation marks omitted.) *State* v. *Davis*, 261 Conn. 553, 563, 804 A.2d 781 (2002). "When reviewing the challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [I]n appeals involving a constitutional question, [the standard is] whether it is reasonably possible that the jury [was] misled." (Internal quotation marks omitted.) *State* v. *Benjamin*, 86 Conn. App. 344, 353, 861 A.2d 524 (2004).[10] "In determining

[10] The court's entire instruction on General Statutes § 53a-167a (a) was as follows: "Now, the specific charge is interfering with a police officer in violation of Connecticut General Statutes § 53a-167a. The defendant is charged with interfering with an officer in violation of § 53a-167a of the Connecticut General Statutes or Penal Code, specifically, East Hartford Officer Patrick Sullivan. Section 53a-167a of the Connecticut General Statutes provides as follows: 'A person is guilty of interfering with an officer when he obstructs, resists, hinders or endangers any peace officer in the performance of his duties.'

"For you to find the defendant guilty of this charge, the state must prove the following elements beyond a reasonable doubt: one, that the defendant obstructed, resisted, hindered or endangered a peace officer; two, that the conduct of the defendant occurred while the peace officer was in the performance of his duties; and, three, that the defendant intended to obstruct, resist, hinder or endanger a police officer or peace officer while the officer was in the performance of his duties.

"A peace officer as defined by our law means a member of an organized local police department. If you find that the officer involved was not a peace officer, then you will find the defendant not guilty and disregard the rest of the court's charge. If you find that the officer, Officer Sullivan, was a peace officer, you will consider the elements of the crime.

"With respect to the first element, there are four words describing the ways interference may be committed. Obstructs means to interpose obstacles or impediments; to hinder, impede or in any manner intrude or prevent. This word and its definition does not necessarily imply the employment of direct force or the exercise of direct means. Resist means to impose by direct, active forcible, quasi-forcible means. Hinder means to make slow or difficult the progress of. It means to hold back, to delay, impede or prevent action. Endanger means to expose to danger or harm. The state need only prove

that the defendant committed one of these forms of interference.

"Intent relates to the condition of mind of the person who commits the act; his purpose in doing it. As defined by our statute, a person acts intentionally with respect to a result or to conduct when his conscious objective is to cause such a result or to engage in such conduct. What a person's purpose, intention or knowledge has been is usually a matter to be determined by inference. No person is able to testify that he looked into another person's mind and saw therein a certain purpose or intention. The only way in which a jury can ordinarily determine what a person's purpose, intention or knowledge was, at any given time, aside from that person's own statements or testimony, is by determining what that person's conduct was and what the circumstances were surrounding that conduct, and from that infer what his purpose, intention or knowledge was.

"To draw such an inference is not only the privilege but also the proper function of a jury. You may draw reasonable inferences from the facts that you find proven. The inferences that you draw from such facts must be reasonable and logical and not the result of speculation or conjecture. Where a group of facts as circumstantial evidence are relied upon for proof of an element of a crime, the inferences must not only be reasonable and logical, but the cumulative impact of the evidence must be such as to convince you that the element has been proven beyond a reasonable doubt.

"Now, if you find that the state has proven beyond a reasonable doubt each of the elements of the crime of interfering with an officer, as I've just defined that crime for you, then you shall find the defendant guilty. On the other hand, if you find that the state has failed to prove beyond a reasonable doubt any one of the elements, you shall then find the defendant not guilty.

"The court would instruct you that our law does not permit a person to use physical force to resist being arrested by a reasonably identifiable police officer. It is necessary that the person being arrested either knew or should have known that the other person was a peace officer. The standard that you are to apply as jurors is whether a reasonable person under the same circumstances as a defendant should have identified the other person as a peace officer.

"In ruling on this standard, such facts as whether the other person wore a uniform, whether he identified himself or showed his badge or other identification, or the manner in which he acted and conducted himself, are all relevant to your decision of whether that person was reasonably identifiable as a peace officer. . . .

"So, let me just go back. Our law does not permit a person to use physical force to resist being arrested by a reasonably identifiable police officer. And then I gave you the standard [which] is whether the person being arrested either knew or should have known the other person was a peace officer. And I said further that the standard that you are to apply is whether a reasonable person under the same circumstances as the defendant should have identified the other person as a peace officer. And you would take

was misled by the trial court's instructions, the charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding [it] to a correct verdict in the case." (Internal quotation marks omitted.) *State* v. *Davis*, supra, 564.

The defendant argues that a central issue in the case was whether he interfered with Sullivan by use of physical force. He claims that the court usurped the jury's fact-finding function by charging: "Lastly, the fact that the defendant thought that the attempted arrest was wrongful or that the defendant may have thought that the peace officer was acting unlawfully is no defense to *the defendant's use of force*, which was unjustified." (Emphasis added.) This instruction, the defendant argues, posited that he in fact used force and effectively instructed the jury that force had been used.

We agree that the question of whether the defendant used physical force was central to the state's theory of the case and was contested by the defendant at trial. Throughout her closing argument in chief, the prosecutor acknowledged that there were two versions of the interaction between Sullivan and the defendant. During rebuttal, she argued that it was for the jury to decide whether Sullivan or the defendant was telling the truth about the use of physical force. In his closing argument, defense counsel argued that the prosecutor used the word *resist* repeatedly. During the colloquy between the prosecutor and the court concerning the jury

into consideration whether the person had on a uniform, showed a badge or other identification, or the manner in which he acted and conducted himself. Those are all relevant.

"Lastly, the fact that the defendant thought that the attempted arrest was wrongful or that the defendant may have thought that the peace officer was acting unlawfully is no defense to the defendant's use of force, which was unjustified."

charge, the prosecutor asked the court to use the standard criminal jury instruction, § 2.44, for resisting arrest by physical force. The court granted the prosecutor's request and gave that charge.[11] On the basis of our review of the evidence, the arguments of counsel and the court's entire charge, we conclude that it was not reasonably possible that the court's instruction as to "the defendant's use of force" misled the jury by positing that the defendant used force, thereby, removing that factual determination from its deliberations. See *State* v. *Benjamin*, supra, 86 Conn. App. 353; see also footnote 10.

We consider the charge at issue in view of the law and the evidence. See *State* v. *Davis*, supra, 261 Conn. 564; cf. *State* v. *Williams*, 199 Conn. 30, 37–38, 505 A.2d 699 (1986) (court's improper isolated use of word dissipated by charge read as whole). As we stated in part I, there are certain facts about which there is no dispute. The defendant acknowledged that he did not get into Sullivan's police vehicle when the officer directed him to do so. The jury also could have found that the defendant did not turn around and place his

---

[11] The standard criminal charge on resisting arrest by physical force, as set forth in J. Pellegrino, supra, § 2.44 provides: "Our law does *not* permit a person to use physical force to resist being arrested by a reasonably identifiable peace officer. It is necessary that the person being arrested either knew or should have known that the other person was a peace officer. The standard that you are to apply as jurors is whether a reasonable person under the same circumstances should have identified the other person as a peace officer. In ruling on this standard, such facts as whether the other person wore a uniform, whether he identified himself or showed his badge or other identification, or the manner in which he acted and conducted himself, are all relevant to your decision of whether that person was reasonably identifiable as a peace officer. If you so find, it is irrelevant whether the peace officer was officially on duty at the time of the attempted arrest, as long as he was identifiable as a peace officer.

"Lastly, the fact that the defendant thought that the attempted arrest was wrongful, or that the peace officer was acting unlawfully, *is no defense to the defendant's use of force*, which was unjustified." (Emphasis added.)

hands behind his back when Sullivan ordered him to do so. As we stated in part I, the court instructed the jury that there are four words that describe the way one can interfere with an officer: "*Obstructs* means to interpose obstacles or impediments; to hinder, impede or in any manner intrude or prevent. This word and its definition does not necessarily imply the employment of direct force or the exercise of direct means. . . . *Hinder* means to make slow or difficult the progress of." (Emphasis added.) The jury reasonably could have found, on the basis of the facts admitted, that the defendant obstructed or hindered Sullivan in the performance of his duties. The isolated portion of the charge concerns physical resistance, not the other forms of interfering with an officer. Further, the court's correct instructions on the burden of proof and the elements of the crime, and the exclusive duty of the jury to find facts and evaluate the credibility of witnesses dissipated the isolated reference to the "use of force . . . ." See *State* v. *Williams*, supra, 39–40.

Although we conclude that no constitutional violation occurred in this case, it was not unreasonable for the defendant to have raised the claim. To avoid similar claims in the future, however, pursuant to our supervisory powers set forth in Practice Book § 60-2, we direct our trial courts to refrain from using the offending language in § 2.44 of the standard criminal jury charge that could create an inference that a defendant used force and consequently runs the risk of usurping the fact-finding province of the jury, i.e., "the defendant's use of force . . . ." See *State* v. *Delvalle*, 250 Conn. 466, 475–76, 736 A.2d 125 (1999) ("we . . . direct our trial courts to refrain from using the [jury instruction at issue in that case] in the future"). Henceforth, trial courts should instruct the jury to make the necessary factual determination as to whether the defendant used force to resist arrest, e.g., "If you find that the defendant used

physical force to resist arrest, the use of physical force is not justified even though the defendant thought the attempted arrest was wrongful, or that the peace officer was acting unlawfully, if you find that the police officer was identifiable and acting within the scope of his or her duties."

## III

The defendant claims that he was denied a fair trial due to prosecutorial impropriety,[12] specifically, that the prosecutor made repeated references to the fact that he is an attorney, during cross-examination and closing argument[13] and at sentencing. We disagree that the defendant was denied a fair trial on the basis of the prosecutor's references to the defendant's occupation.

The defendant claims that the prosecutor's intent in referring to his occupation was threefold: (1) to demonstrate that the defendant, as an attorney, had a superior knowledge of criminal law and, thus, knowingly violated the law when he interacted with Sullivan, (2) to discredit the defendant, a recent law school graduate, by making it appear as if all lawyers know criminal law and procedure and that he was lying about his ignorance of criminal procedure, and (3) to impress upon the court that as an attorney he should be treated more harshly than a layperson for the crime with which he was charged.

In support of his claim, the defendant relies on the following portion of the prosecutor's cross-examination of him:

---

[12] In his brief, the defendant used the term "prosecutorial misconduct." In *State* v. *Fauci*, 282 Conn. 23, 26 n.2, 917 A.2d 978 (2007), our Supreme Court adopted the term "prosecutorial impropriety" when referring to allegedly improper statements made by a prosecutor at trial.

[13] The defendant failed to identify the language in the prosecutor's closing argument that he claims was improper or to brief his argument in that regard. We therefore decline to review this claimed prosecutorial impropriety.

"[The Prosecutor]: . . . I'm going to [go] back to my question which . . . it's okay, you didn't really answer it. But you know, don't you, that under the law, if there is a warrant, the police have to take you into custody?

"[The Defendant]: I know as much about that as any layperson would know because I don't do criminal law. Yeah, from a layperson's standpoint, if there's a warrant out for someone's arrest, I presume that an officer takes you into custody or maybe they walk in—

"[The Prosecutor]: They didn't teach you that in law school, sir? They didn't talk about warrants in law school?

"[The Defendant]: Well, I had criminal law just like you, but I don't practice criminal law. I practice commercial real estate and stuff like that.

"[The Prosecutor]: You don't know that if there's a warrant, the police have to take you into custody?

"[The Defendant]: No, I don't know that.

"[The Prosecutor]: You honestly don't know that?

"[The Defendant]: No, I don't know that.

\* \* \*

"[The Prosecutor]: So, you think Ficacelli set you up so that Sullivan could have another arrest under his belt?

"[The Defendant]: I never heard about any point system, arrest point system until today.

"[The Prosecutor]: Well, isn't that what you just said?

"[The Defendant]: But that's what I felt when I look back upon the—

"[The Prosecutor]: Well, you may not know a lot about the law, apparently, but that would be just wrong, wouldn't it?

"[The Defendant]: Well, I don't know how much I know about the law, but yeah, that would be wrong. My civil rights were actually violated."

The defendant also relies on portions of the prosecutor's statements to the court prior to sentencing to the effect that because he is an attorney, he should have known better and conducted himself in a manner consistent with the Rules of Professional Conduct. The defendant did not object to the prosecutor's cross-examination or to her comments at sentencing. He requests that we review his claims pursuant to *State* v. *Williams*, 204 Conn. 523, 540, 529 A.2d 653 (1987). See *State* v. *Stevenson*, 269 Conn. 563, 572–73, 849 A.2d 626 (2004) (no need to engage in *Golding* review of alleged prosecutorial impropriety).

"[I]n analyzing claims of prosecutorial [impropriety], we will engage in a two step analytical process. The two steps are separate and distinct: (1) whether [impropriety] occurred in the first instance; and (2) whether that [impropriety] deprived a defendant of his due process right to a fair trial. Put differently, [impropriety] is [impropriety], regardless of its ultimate effect in the fairness of the trial; whether that [impropriety] caused or contributed to a due process violation is a separate and distinct question . . . . Only if we conclude that prosecutorial [impropriety] has occurred do we then determine whether the defendant was deprived of his due process right to a fair trial." (Citation omitted; internal quotation marks omitted.) *State* v. *McCleese*, 94 Conn. App. 510, 516, 892 A.2d 343, cert. denied, 278 Conn. 908, 899 A.2d 36 (2006).

"We are mindful throughout this inquiry, however, of the unique responsibilities of the prosecutor in our judicial system. A prosecutor is not only an officer of the court, like every other attorney, but is also a high public officer, representing the people of the [s]tate,

who seek impartial justice for the guilty as much as for the innocent. . . . By reason of his [or her] office, [the prosecutor] usually exercises great influence upon jurors. [The prosecutor's] conduct and language in the trial of cases in which human life or liberty [is] at stake should be forceful, but fair, because he [or she] represents the public interest, which demands no victim and asks no conviction through the aid of passion, prejudice or resentment. If the accused be guilty, he [or she] should [nonetheless] be convicted only after a fair trial, conducted strictly according to the sound and well-established rules which the laws prescribe." (Internal quotation marks omitted.) *State* v. *Ritrovato*, 280 Conn. 36, 61–62, 905 A.2d 1079 (2006).

The defendant claims, in part, that portions of the prosecutor's cross-examination of him were improper. "Prosecutorial [impropriety] may occur in the course of cross-examination of witnesses . . . and may be so clearly inflammatory as to be incapable of correction by action of the court. . . . In such instances there is a reasonable possibility that the improprieties in the cross-examination either contributed to the jury's verdict of guilty or, negatively, foreclosed the jury from ever considering the possibility of acquittal." (Citation omitted; internal quotation marks omitted.) *State* v. *Williams*, supra, 204 Conn. 538–39. In responding to the defendant's claim that the prosecutor's cross-examination of him was improper, the state argues that the prosecutor's cross-examination was probative of the defendant's knowledge and state of mind as it related to the element of intent. The examination was intended to demonstrate to the jury that the defendant had some special knowledge or education by which to measure his conduct.

We agree with the state that the prosecutor's cross-examination went to the issue of the defendant's intent,

an essential element of interfering with an officer pursuant to § 53a-167a (a). The prosecutor's questions therefore did not constitute prosecutorial impropriety. Although the prosecutor's cross-examination of the defendant, which presumed that the defendant had taken courses in criminal law and police procedures, arguably lacked a solid foundation, that issue is an evidentiary one, not a constitutional one that deprived him of a fair trial.

The defendant also claims that the prosecutor's impropriety was most egregious during the sentencing phase of trial, and consequently, the court held him to a higher standard of conduct on the basis of his occupation.[14] We agree with the defendant that the prosecutor pushed her argument to the limit when she suggested that the defendant had violated the code of

[14] The defendant excerpted the following portions of the prosecutor's comments for our review: "Okay, Your Honor. Well, Your Honor, I know we just had the trial and everything. . . . The state is going to recommend that [the defendant] receive a sentence of one year, suspended after a period of incarceration, three years of probation with conditions. I'll elaborate on [that] later and a $1000 fine plus costs, Your Honor. And I know [defense counsel] is going to say it's harsh, Your Honor, so I'll give my reasons.

"As you know, Your Honor, [the defendant] is an attorney. I pulled the attorney's oath out of the Rules of Professional Conduct, which, Your Honor, I'm sure, is familiar with, which emphasizes that lawyers may not do anything dishonest, especially nothing dishonest in court—also, cannot maintain any cause of action that's false or unlawful. And I would submit, Your Honor, it took the jury seventeen minutes to decide the truth lay with the police and not with [the defendant]. And I would submit that [the defendant] testified untruthfully in an effort to secure an acquittal and did so, too, Your Honor, with the intent of then, if it worked, of filing a false lawsuit against the East Hartford police department.

"I'll point out, too, Your Honor, that the crime he has been convicted of—I mean, I'm not going to argue that anytime a lawyer is convicted of a crime, because they're a lawyer they should be treated more harshly than someone who's not. But this particular crime, being served with a warrant issued by the court, kind of goes to the heart of the court system. I mean, if the police couldn't serve warrants issued by the court, Your Honor, our system would break down. So, you know, this isn't a disorderly conduct with his wife or a breach of peace at tailgates or something like that. This is something that goes to the heart of the court process. And to me, for an

professional responsibility by denying a detailed understanding of criminal law and police procedures. This questionable argument, however, was made to a judge, not to a jury. Moreover, the defendant has not demonstrated that there is anything about his sentence that is fundamentally unfair.

We note that the court did make some comments about the defendant's claiming not to be well versed in the criminal law and not knowing how to balance his checkbook, but the defendant's sentence is well within the court's discretion. It is consistent with due process for a sentencing court to consider "out-of-court information relative to the circumstances of the crime and to the convicted person's life and circumstance. . . . It is . . . fundamental . . . that a sentencing judge may appropriately conduct an inquiry broad in scope, and largely unlimited either as to the kind of information he may consider or the source from which it may come." (Citation omitted; internal quotation marks

officer of the court to refuse to submit to a warrant issued by the court is especially egregious.

"And I also submit that [the defendant]—that he was untruthful in his testimony, Your Honor. Frankly, I think that if it were a crime in Connecticut to knowingly have the first name of John, he would have said he didn't know what his first name was. He did everything he could, including denying rudimentary knowledge of the law, to try to get himself off the hook.

\* \* \*

"So, I find—I believe—or I feel that his entire course of conduct, starting with the initial incident through the trial, was directed toward subverting, thwarting and perverting the criminal justice system. I really do, and for an officer of the court to do that, I find to be egregious.

\* \* \*

"Like I said, I think—I believe he has violated a couple of different provisions of rule 8.4 of the [Rules of Professional Conduct]: committed an act that reflects adversely on his honesty-trustworthiness or fitness as a lawyer, engaged in conduct involving dishonesty, fraud, deceit or misrepresentation and conduct that's prejudicial to the administration of justice. I mean, I realize we haven't charged him with perjury, but I think, Your Honor, as part of the sentencing, the jury, by their verdict, found that he wasn't telling the truth, and I thought it was pretty obvious, actually."

omitted.) *State* v. *Patterson*, 236 Conn. 561, 570–71, 674 A.2d 416 (1996).

The court explained that the sentence was given as a deterrent, which is a permissible goal of sentencing; see *State* v. *Hickam*, 235 Conn. 614, 629, 668 A.2d 1321 (1995), cert. denied, 517 U.S. 1221, 116 S. Ct. 1851, 134 L. Ed. 2d 951 (1996), overruled in part on other grounds by *State* v. *Crawford*, 257 Conn. 769, 779–80 & n.7, 778 A.2d 947 (2001), cert. denied, 534 U.S. 1138, 122 S. Ct. 1086, 151 L. Ed. 2d 985 (2002), quoting *United States* v. *Halper*, 490 U.S. 435, 448–49, 109 S. Ct. 1892, 104 L. Ed. 2d 487 (1989); and to send a message that interfering with an officer is not acceptable conduct whether one is an officer of the court or a seventeen year old from a poor neighborhood.[15] The court stated that it understood that the defendant was offended by the fact that the police had used a ruse, but that was not a license to disobey a police officer. Furthermore, the court stated that if the case were referred to it for a recommendation, it would not recommend that the defendant's license to practice law be suspended. We therefore conclude that the defendant was not denied a fair trial on the basis of the claimed prosecutorial impropriety.

The judgment is affirmed.

In this opinion DiPENTIMA, J., concurred.

---

[15] The court commented in part at sentencing as follows: "[T]oo often, the public looks at what happens and makes a decision about what they feel about the criminal justice system based on what they see happen to people like [the defendant], and I'm mindful of that. And I don't want citizens to set foot inside this courtroom thinking that there's a double standard. There's law for the poor and law for the nonpoor. There's law for the academically gifted and a different law for those who are less fortunate and who couldn't finish high school. The law is the same. When you see a blue uniform, follow directions. Take it to court. Don't try to settle it on the street."

FLYNN, C. J., dissenting. The majority opinion rests on the notion that where alternative ways of transgressing a statute are possible, a charge that takes away from the jury one of the factual findings necessary for a finding of guilt on one of those alternatives is not harmful where there remains evidence of other alternatives not tainted by error in the charge. I conclude that such an instruction cannot reasonably be considered harmless and, therefore, respectfully dissent.

I agree with the majority that whether the defendant, John B. Sitaras, used physical force in his interaction with the police officer "was central to the state's theory of the case and was contested by the defendant at trial." I also would conclude that because that was a jury issue, the court's instruction to the jury was improper. Specifically, the court instructed the jury that any subjective view that the defendant had that the arresting officer might have been acting unlawfully "[was] no defense to the defendant's use of force, *which was unjustified.*" (Emphasis added.) The use of force, whether justified or unjustified, however, was purely a jury issue. Yet, this instruction improperly removed that issue from the jury's consideration. I disagree with the majority that the effect of this error was harmless.

This is not a case dealing with evidentiary insufficiency as to one of the alternative ways of violating a particular criminal statute as occurred in *State* v. *Chapman*, 229 Conn. 529, 643 A.2d 1213 (1994) (en banc), which recognized that "a factual insufficiency regarding one statutory basis, which is accompanied by a general verdict of guilty that also covers another, factually supported basis, is not a federal due process violation." Id., 539. For *Chapman* to be on similar footing with the present case, the *Chapman* court would have had to instruct the jury that the defendant *did use force* on the victim, thus removing that disputed element

from the jury's consideration. Such was not the case, however. In *Chapman*, the court instructed the jury on two different ways to meet an element of the crime charged, but one of the ways was not factually supported by the evidence. The court did not tell the jury that one of the factual ways to meet that element, in fact, had been established by the state, thus removing it completely from the jury's consideration, as happened in the present case.

Here, the court's instruction did not concern a factually insufficient manner of meeting an essential element of the crime charged. Rather, the court's instruction eliminated the state's burden of proof on an essential element of the crime charged (as with a mandatory presumption). I would conclude that this amounted to a due process violation; see *Sandstrom* v. *Montana*, 442 U.S. 510, 517–24, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979); *State* v. *Cerilli*, 222 Conn. 556, 583–84, 610 A.2d 1130 (1992); *State* v. *Moore*, 23 Conn. App. 479, 481, 581 A.2d 1071, cert. denied, 217 Conn. 802, 583 A.2d 132 (1990); subject to harmless error analysis because the instruction was not the subject of a proper objection during trial. See *State* v. *Faust*, 237 Conn. 454, 469, 678 A.2d 910 (1996); *State* v. *Cerilli*, supra, 584.

Where there is more than one way to violate a statute, and the jury is told by the court that one of those alternate ways has been established, it is very unlikely that the jury would move on to consider whether any other alternate way also had been established. Having been instructed that the element had been met, there would be no reason for the jury to consider another manner in which the statute could have been violated. Accordingly, the improper instruction could not reasonably be considered harmless, as it took that issue away from the jury's consideration.

Because of the importance of the court's improper instruction on this essential element of the crime, which

specifically told the jury that the defendant *had used unjustified force* against the police officer, I would conclude that the error was not harmless in the conviction of the defendant, and, in the interests of justice, I would reverse the judgment and order a new trial.

Accordingly, I respectfully dissent.