THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOHN K. STEINMETZ, Defendant-Appellant.

Second District No. 2—94—1341

Opinion filed March 21, 1997.

Daniel M. Kirwan and E. Joyce Randolph, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Michael J. Waller, State's Attorney, of Waukegan (William L. Browers and Mary Beth Burns, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE COLWELL delivered the opinion of the court:

Defendant, John Steinmetz, was convicted of felony retail theft (720 ILCS 5/16A—3(a) (West 1992)). Defendant appeals, contending that (1) the trial court should have conducted a hearing on defendant's fitness to stand trial where the record shows that defendant was taking psychotropic medication at the time of trial; (2) the court erred in denying defendant's motion for a continuance to obtain medical records to support his insanity defense; and (3) the court erred in requiring defendant to stand trial in his jail uniform.

Daniel Meier, a part-time security guard at a Jewel store, saw defendant take 10 packs of cigarettes from a display and put them in a shopping basket carried by a male companion. As defendant and his companion proceeded down aisle 5, defendant put the cigarettes in his jacket pocket. He then went to the front of the store and sat down. After his companion went through the checkout line and paid for items in the basket, defendant started to leave the store.

Meier detained the pair because defendant had not paid for the cigarettes. When Meier confronted defendant, he initially denied that he had any cigarettes. He then gave Meier two packs, then another two packs. The remaining packs fell to the floor and defendant tried to kick them under a display case. Defendant then said that he had forgotten to pay for the cigarettes.

An information filed December 16, 1993, charged defendant with retail theft. The charge was enhanced to a felony because defendant had prior theft convictions.

Defendant filed a motion requesting a hearing on his fitness to stand trial. The motion asserted, among other things, that defendant advised defense counsel that he had undergone psychiatric care for bipolar disorder and was then taking lithium, Valium, and Doxepin. The motion also recited defense counsel's personal observations of de-

fendant and concluded that he was unable to understand the nature of the proceedings or assist in his defense.

On February 18, 1994, the court found defendant unfit to stand trial. The court ordered him placed in the custody of the Department of Mental Health and Developmental Disabilities for evaluation and treatment.

The court held another fitness hearing on August 25, 1994. Defense counsel stipulated to the contents of a report from the Elgin Mental Health Center. The report, prepared by psychologist Connie Kinast, states that defendant had been prescribed psychotropic medication, specifically, Diazepam and lithium carbonate. Kinast concluded that defendant was fit to stand trial.

Defense counsel contended, however, that defendant remained unfit. Defendant testified. After considering the report, defendant's testimony, and counsels' arguments, the court found defendant fit to stand trial, on the same date of August 25, 1994, and set the case for trial on September 19, 1994.

On September 16, defendant filed and the court heard a motion to continue the trial date but apparently did not rule on the motion. The motion alleged that defendant was not prepared for trial because his "extensive mental health history" was "being compiled." The motion further alleged:

> "Most of these in-patient hospitalizations do appear to impact on the defendant's mental state at the time of the commission of the alleged offense as each appear [sic] to be related to the same ongoing and longstanding mental disorders and disabilities."

The motion asserted that the mental health records were expected to arrive within the next week. The court denied the motion for a continuance on September 19, 1994, the day of trial.

On September 19, 1994, defense counsel said that he expected to receive the records at any time. He requested a continuance of no more than one week to receive and review the records. The court denied the motion. Defense counsel then requested a brief continuance to permit defendant to change into street clothes rather than having defendant tried in his jail uniform. The court denied that motion as well and the cause proceeded to trial.

Meier was the State's only witness. Defendant testified that he was taking medication every day. Without the medication, he felt dizzy and occasionally blacked out. At the time of trial, he was taking medication to calm him, but it was not working very well. He remembered nothing about being in the Jewel store that night. He had talked with doctors at a Veterans' Administration (VA) hospital and at the Elgin Mental Health Center about his memory problems.

The court instructed the jury on the insanity defense, but the jury found defendant guilty. The court denied defendant's post-trial motion and sentenced him to three years' imprisonment. Defendant filed a timely notice of appeal.

Defendant first contends that the court should have *sua sponte* ordered a fitness hearing because the record reveals that defendant was taking psychotropic medication at the time of trial. The State responds that defendant had a fitness hearing and is not entitled to another.

■ Due process prohibits the prosecution of a defendant who is unfit to stand trial. *People v. Brandon*, 162 Ill. 2d 450, 455-56 (1994). A defendant is considered unfit if, because of a mental or physical condition, he is unable to understand the nature and purpose of the proceedings or to assist in his defense. 725 ILCS 5/104—10 (West 1992); *People v. Eddmonds*, 143 Ill. 2d 501, 512 (1991). The circuit court has a duty to order a fitness hearing whenever a *bona fide* doubt exists of a defendant's ability to understand the charges and participate in his defense. *People v. Kinkead*, 168 Ill. 2d 394, 407 (1995).

■ At the time of trial, section 104—21(a) of the Code of Criminal Procedure of 1963 provided that "[a] defendant who is receiving psychotropic drugs or other medications under medical direction is entitled to a hearing on the issue of his fitness while under medication." 725 ILCS 5/104—21(a) (West 1992). In a line of recent cases beginning with *Brandon*, the supreme court has held that a trial court must order a fitness hearing when it receives information that a defendant is taking psychotropic medication, even if defendant does not request one. *Brandon*, 162 Ill. 2d at 457; *People v. Birdsall*, 172 Ill. 2d 464, 476-77 (1996). If the record does not fully disclose the circumstances of defendant's use of psychotropic drugs, the remedy is a partial remand for the taking of evidence on this question. *Kinkead*, 168 Ill. 2d at 415.

Of course, defendant acknowledges that the trial court conducted a fitness hearing within a month of the trial date and found defendant fit to stand trial. However, defendant complains that this was merely a "general" fitness hearing that did not specifically consider the effects of the psychotropic medication. Defendant argues that, "[h]ad there been a full-blown hearing on the issue of the medication's effects, the psychologist making the report presumably would have been required to testify to the bases for her conclusions, so that the court could determine whether the medication being given, while perhaps calming defendant, nevertheless affected defendant's ability to make cognitive decisions about how to proceed at trial."

Neither section 104—21(a) nor the *Brandon* line of cases creates a right to a separate fitness hearing on the effect of psychotropic medication on a defendant's ability to understand and participate in the proceedings. The statute and cases merely provide that a defendant's ingestion of psychotropic drugs is one circumstance that may raise a *bona fide* doubt of his fitness to stand trial.

In this case, the trial court relied on Kinast's report in concluding that defendant was fit for trial. The one-page report notes that defendant was then being prescribed Diazepam and lithium carbonate and concludes that defendant was fit for trial. The only logical conclusion that can be drawn from the report is that Kinast considered the medications' effect in reaching her conclusion that defendant was fit for trial. If defendant wanted to explore the bases of Kinast's conclusions, he could have subpoenaed her to testify at the hearing or perhaps obtained an independent evaluation. Instead, defendant stipulated to the contents of the report and relied on his own testimony to attempt to establish his continuing unfitness.

We decline to hold that *Brandon*'s nonwaiver rule requires a trial court not only to order a hearing *sua sponte* if defense counsel fails to request one, but also to override counsel's trial strategy in the conduct of that hearing. Whether to present the testimony of a particular witness is generally a question of trial strategy. *People v. Jones*, 155 Ill. 2d 357, 369 (1993). Here, defendant's use of psychotropic drugs was known to the psychologist conducting the evaluation and to the trial court. Defendant had the opportunity to present additional evidence. Under these circumstances, defendant is not entitled to a second opportunity to establish his unfitness for trial.

*People v. Johnson*, 276 Ill. App. 3d 656 (1995), and *People v. Guttierez*, 271 Ill. App. 3d 301 (1995), on which defendant relies, are distinguishable. In those cases, although the trial court, the prosecutor, and defense counsel were aware of reports stating that defendants were "mentally fit for trial, with medication," the courts failed to conduct the required fitness hearings.

■ Defendant next contends that the court erred in denying his request for a short continuance to obtain medical records that he claims were necessary to establish an insanity defense. Although defendant testified at trial about his history of mental illness and treatment, he presented no medical opinions on this question. Thus, defendant contends, the inability to secure his medical records prior to trial hampered his ability to present a defense.

The granting of a motion for a continuance is within the trial court's sound discretion, and its ruling will not be reversed absent an abuse of that discretion. *People v. Collins*, 106 Ill. 2d 237, 281 (1985).

In reviewing the denial of a continuance to secure evidence, the court should consider (1) whether defendant was diligent; (2) whether the evidence was material and might have affected the jury's verdict; and (3) whether defendant was prejudiced. *People v. Ward*, 154 Ill. 2d 272, 307 (1992).

We agree with the State that defendant failed to establish his diligence in securing the medical records. Nothing in the record shows when defense counsel first requested the records or documents defendant's subsequent efforts to secure their timely production.

Even if defendant established his diligence, however, he cannot demonstrate prejudice from the absence of the records at trial. As the State points out, when the records were eventually produced, the virtually unanimous conclusion of the professionals who examined defendant was that he was faking symptoms of mental illness. Kinast's report from the Elgin Mental Health Center states that defendant had a "tendency to exaggerate symptoms, resulting in a 'faking bad' profile." Another psychologist, John Dunne, examined defendant before sentencing. He concluded that the results of psychological tests he administered suggested a "high likelihood of an invalid profile due to the over-reporting of psychopathology."

A report from the VA hospital states that defendant had spoken about memory problems, but no clear memory deficit was apparent. Rather, defendant exhibited a "selective memory loss when he chose not to recall things." Speaking of the instant offense, defendant told a nurse, " 'I've been doing this for years, sometimes I get caught and sometimes I don't.' "

In light of the overwhelming opinion of the experts that defendant was faking symptoms, we conclude that defendant has not established he was prejudiced by not having the reports available at trial. Defendant does not point to anything specific in the medical records that would have supported his insanity defense. The trial court did not abuse its discretion in denying a continuance.

■ Defendant's final contention is that the court erred by denying his motion for a continuance on the morning of trial so that defendant could change from his jail uniform into street clothes. Defense counsel stated, "I have already discussed this with the Jail on Friday and this morning. They advised me that would be done." The trial court stated that it was not done, but denied the motion.

A defendant's right to a fair trial is violated when he is forced to appear before the jury in readily identifiable jail clothing. *Estelle v. Williams*, 425 U.S. 501, 505-06, 48 L. Ed. 2d 126, 131, 96 S. Ct. 1691, 1693-94 (1976). However, the right not to be tried in jail clothing is, like many other rights of criminal defendants, subject to harmless-

error analysis. *Estelle*, 425 U.S. at 506, 48 L. Ed. 2d at 131-32, 96 S. Ct. at 1694; *People v. Medley*, 111 Ill. App. 3d 444, 448 (1983).

In *Medley*, the court observed that defendant "had ample opportunity to obtain civilian clothing before his trial" and decried defendant's motion for a continuance as a "delaying tactic." *Medley*, 111 Ill. App. 3d at 448. In this case, defense counsel represented that he contacted jail officials twice in an attempt to assure that defendant would have access to "civilian" clothing for trial and jail personnel assured him that "it would be done." However, on the morning of trial, defendant apparently was brought to court in his jail uniform. Under these circumstances, we decline the State's invitation to find that defendant's request was merely a delaying tactic. We can perceive no tactical advantage from a delay of 15 to 30 minutes. The trial court should have granted defendant's request for a brief continuance.

However, we find that the error was harmless beyond a reasonable doubt in light of the overwhelming evidence of defendant's guilt. Meier saw defendant place the cigarettes in a basket, transfer them to his coat pocket, and walk past the cash registers without paying for them. When Meier confronted defendant, he first denied having any cigarettes. Then, when several packs fell out of his pocket, he attempted to kick them under a display case. Defendant's actions demonstrate his consciousness of guilt and belie his assertions that he merely forgot to pay for the cigarettes. In light of this substantial and direct evidence of defendant's guilt, defendant's appearance before the jury in jail clothing could not have affected the jury's verdict.

The judgment of the circuit court of Lake County is affirmed.

Affirmed.

GEIGER, P.J., and BOWMAN, J., concur.