# In the

# United States Court of Appeals

## For the Seventh Circuit

---

No. 04-3112

BRADLEY S. WHITMAN,

*Petitioner-Appellant,*

*v.*

BYRAN BARTOW,

*Respondent-Appellee.*

---

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 04 C 248—**John C. Shabaz**, *Judge.*

---

ARGUED NOVEMBER 8, 2005—DECIDED JANUARY 18, 2006

---

Before BAUER, MANION, and EVANS, *Circuit Judges.*

BAUER, *Circuit Judge.* During his trial for drug-related offenses, Bradley Whitman appeared before the jury in an orange prison jumpsuit. Whitman was ultimately found guilty and sentenced to nine years in prison. After exhausting his state remedies, *State v. Whitman*, 259 Wis. 2d 482 (Wis. Ct. App. 2002) (petition for review denied by *State v. Whitman*, 260 Wis. 2d 753 (Wis. 2003)), Whitman sought habeas corpus in federal district court. He alleged that he was denied due process because he was compelled to wear a prison-issued jumpsuit during his four-day jury trial. In addition, Whitman asserts that his trial counsel was deficient for failing to secure him other clothing to wear during the trial proceedings. The district court denied

Whitman's habeas petition. We affirm the judgment of the district court, finding that any constitutional infirmity resulting from Whitman's appearance in his prison jump-suit amounts to harmless error.

## I.  Background

The Wisconsin appellate court recited the following facts, which we presume to be true, 28 U.S.C. § 2254(e)(1), when it affirmed Whitman's conviction.

On February 27, 1998, Whitman was arrested for killing a woman who had been a guest at his house. During a lawful search of Whitman's home, police found and seized illegal drugs and drug paraphernalia. Whitman was subsequently charged with first-degree intentional homicide and various drug-related offenses. The homicide and drug charges were later severed, with the homicide trial held first. Whitman was found guilty of negligent homicide, a lesser included offense of first-degree intentional homicide, and sentenced to seven years in prison.

While Whitman was serving this sentence, the trial concerning the drug charges was scheduled. Whitman appeared before the court in his orange, prison-issued jumpsuit. The judge and Whitman's attorney engaged in a colloquy in which the judge asked the attorney how Whitman would be dressed at trial. The attorney stated that Whitman would be dressed in his prison garb, to which Whitman interjected: "I have no other clothes, your Honor." The court then stated:

> All right. And I did—The record should reflect I did speak briefly to defense counsel yesterday afternoon. Defense counsel was here to meet with his client yesterday after Mr. Whitman had been transported from wherever he is incarcerated, and I did inquire whether or not he had street clothes, and counsel said

> he wasn't sure. I said, well, check on it, if you want him to appear in street clothes make those arrangements; and apparently that decision has been made that he will appear in that uniform.

Trial Tr. 8-9, Jan. 18, 2001. In response, Whitman's attorney stated, "[t]hat's correct, your Honor." *Id*. at 9. The trial began; Whitman was convicted on all charges and sentenced to a total of nine years in prison.

On September 26, 2001, Whitman filed a motion for a new trial, arguing that both the circuit court and trial counsel failed to properly safeguard Whitman's rights because, in part, he was compelled to wear the prison jumpsuit at trial. At the hearing, Whitman's attorney testified that he took no steps to see that Whitman had street clothing to wear at trial. Moreover, he could not recall ever discussing the subject with Whitman, and he had no strategic reason for Whitman to appear in a prison jumpsuit. However, the attorney was sure that Whitman never objected to wearing the jumpsuit; he believed that Whitman would have complained "loudly and repeatedly" if he did not want to appear in the jumpsuit at trial, and the attorney would have recalled these complaints. Stipulated testimony from Whitman, however, stated that Whitman did not want to appear in a prison jumpsuit at trial, and did in fact complain.

The court denied Whitman's motion. The court accepted the attorney's version of the facts, and determined that Whitman did not object to wearing the prison jumpsuit. The court also concluded that Whitman's appearance in the jumpsuit did not result in any prejudice to his case. According to the court, Whitman's guilt on the drug charges was overwhelming. Therefore, his appearance in the prison jumpsuit was irrelevant. Whitman appealed.

The Wisconsin Court of Appeals, the last state court to consider the merits of the issue, rejected all of Whitman's claims. The appeals court concluded that because

Whitman did not timely object to appearing in a prison jumpsuit, he could not later assert that his rights were violated. Therefore, his due process claim failed. Whitman's ineffective assistance of counsel claim likewise perished. The appeals court agreed with the trial court that the abundant evidence of Whitman's guilt negated any prejudice that may have been caused by his appearance in prison clothing.

Whitman filed a petition for habeas relief in the district court for the Western District of Wisconsin, arguing that the Wisconsin Court of Appeals decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The district court disagreed, and dismissed Whitman's petition with prejudice.

Whitman filed a notice of appeal in this Court, which we construed as an application for a certificate of appealability. After reviewing the record on appeal, we issued a certificate to determine whether "Whitman was compelled to wear a prison jumpsuit at trial in violation of due process," and "whether he received constitutionally sufficient assistance of counsel."

## II. Analysis

A state cannot compel a defendant to stand trial before a jury wearing identifiable prison clothing without offending that defendant's Fourteenth Amendment due process rights. *Estelle v. Williams*, 425 U.S. 501, 505 (1976). However, the Supreme Court in *Estelle* noted that the defendant must timely object to appearing in prison attire and that "the failure to make an objection to the court as to being tried in such [identifiable prison] clothes, for whatever reason, is sufficient to negate the presence of compulsion necessary to

establish a constitutional violation." *Id.* at 512-13 (footnote omitted).

Whitman claims that his statement to the court, "I have no other clothes, your Honor," was a timely and proper objection to his appearing at trial in prison garb. This objection, Whitman argues, was ignored. Therefore, he had no choice but to proceed to trial in his prison jumpsuit. He was, in other words, "compelled" to sit before the jury in the jumpsuit.

The Wisconsin Court of Appeals rejected this argument, holding that Whitman's statement "[did] not rise to the level of an objection." *Whitman*, 259 Wis. 2d at ¶14. However, we find that whether Whitman's declaration is tantamount to a valid objection is irrelevant. Assuming Whitman's outburst does rise to the level of an objection and thus the court violated Whitman's constitutional rights, this violation would be harmless given the overwhelming evidence of Whitman's guilt.[1]

---

[1] Our determination of whether Whitman's appearance in his prison attire was harmless proceeds primarily from our own review of the record. The district court did not conduct a harmless error analysis, but remand in this case is unnecessary. The undisputed facts disclosed in the record provide an adequate basis for this Court to determine whether the alleged constitutional violations were harmless. We have adopted this same approach in other cases. *Silverson v. O'Leary*, 764 F.2d 1208, 1218 (7th Cir. 1985) (independently reviewed the record to hold counsel's absence during jury deliberations a harmless error rather than remand case to district court to conduct harmless error analysis); *Jenkins v. Nelson*, 157 F.3d 485, 494-96 (7th Cir. 1998) (holding that this court should exercise its discretion to consider harmlessness of instructional error even though issue was not raised before the district court because the harmlessness of the error was certain and further proceedings would only be futile).

In the habeas context, an error is harmless unless it had a "'substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). Therefore, trial errors are often found harmless where the record is replete with overwhelming evidence of the defendant's guilt. *Neder v. United States*, 527 U.S. 1, 18-19 (1999). Such is the case here. Whitman faced three drug charges: possession of marijuana, possession of drug paraphernalia, and possession of cocaine. At trial, Whitman testified that he possessed the marijuana and paraphernalia found by the police in his home. Whitman only contested the cocaine charge. He claimed the cocaine was planted by persons visiting his home. However, the cocaine was found by police in a bag Whitman admitted was his. This bag contained the drug paraphernalia Whitman claimed to own. Cocaine residue was also found on several different items strewn about Whitman's house. In fact, in closing arguments, Whitman's attorney stressed his admissions:

> My client has acknowledged that he possessed stems and seeds, and that they have been shown to contain [marijuana]. We're not contesting that, nor has my client contested that he had drug paraphernalia. What he has contested is that any of the drug paraphernalia was for cocaine use. He has acknowledged that he has the drug paraphernalia for marijuana use, and he has testified that he used marijuana; and he has testified very strongly and vigorously as any person can that he doesn't use cocaine, he has no desire to use cocaine, and he did not knowingly possess cocaine.

Trial Tr. 108, Jan. 19, 2001.

To believe Whitman's version of the facts—that the cocaine was planted in his home—the jury would have

had to find that Whitman and his story were credible. During the trial, Whitman lied under oath. Whitman was asked if he had ever been convicted of a crime. His answer: "four misdemeanors." In reality, one of those crimes was a felony. The prosecution exploited this lie in its closing, and in doing so likely destroyed Whitman's credibility. The jury retired to deliberate knowing that Whitman was a convicted criminal who lied under oath and admitted to the other drug charges. These facts were not affected by his appearance before the jury in identifiable prison clothing. We are therefore convinced that even if the trial court erred in failing to acknowledge Whitman's ambiguous objection to his attire, such an error was harmless.

Because Whitman's appearance before the jury in his prison clothing did not prejudice the outcome of his trial, Whitman's ineffective assistance of counsel claim also fails. An ineffective assistance of counsel claim is governed by *Strickland v. Washington,* 466 U.S. 668 (1984). A successful claim under *Strickland* requires the defendant to make two showings. First, the defendant must show that counsel's performance fell below an objective standard of reasonableness as determined by prevailing professional norms. *Id*. at 687-88. Second, the defendant must show that the deficient performance of counsel prejudiced his defense. *Id*. at 692. Prejudice will be found where there is a reasonable probability that, but for the deficient performance of counsel, the outcome of the proceedings would have been different. *Id*. at 693-94. The evidence of Whitman's guilt was overwhelming, and his attire was not an outcome determinative factor in the jury's decision.

Last, while Whitman's appearance in prison garb was harmless in this case, it should be remembered that requiring a defendant to appear before a jury in prison clothing can detrimentally impact the outcome of a criminal trial. Prison clothing can serve as a "constant reminder of the accused's condition" and may undermine the fairness of

the proceedings. *Estelle*, 425 U.S. at 504-05. It would be well-worth a court's time and expenses to keep extra suits at the courthouse for a defendant to wear, should he appear at trial in his prison-issued jumpsuit. Had the Price County Court in this case had an extra suit on hand, this lengthy and protracted litigation would not have been necessary. Nor would Whitman wonder if the jury convicted him for some other reason than its finding of factual guilt.

### III.  Conclusion

For the reasons set forth above, the decision of the district court is AFFIRMED.

A true Copy:

      Teste:

                _____
                *Clerk of the United States Court of*
                *Appeals for the Seventh Circuit*