STATE OF CONNECTICUT *v.* IRVIN D. ROSE
(AC 28174)

McLachlan, Lavine and Foti, Js.

Argued October 17, 2008—officially released January 27, 2009

*Joseph A. Jaumann*, special public defender, with whom, on the brief, was *John C. Drapp III*, special public defender, for the appellant (defendant).

*Timothy F. Costello*, deputy assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict*, state's attorney, and *Nicholas J. Bove, Jr.*, senior assistant state's attorney, for the appellee (state).

*Opinion*

McLACHLAN, J. The defendant, Irvin D. Rose, appeals from the judgment of conviction, rendered after a jury trial, of assault of public safety personnel, specifically an employee of the department of correction (department), in violation of General Statutes § 53a-167c (a) (5). On appeal, the defendant claims that the trial court improperly (1) denied his motion for a judgment of acquittal because the evidence was insufficient to support his conviction and (2) compelled him to wear prison garb during trial.[1] We agree with the defendant's second claim and therefore reverse the judgment of the trial court.

The jury reasonably could have found the following facts. On January 15, 2006, the defendant was incarcerated at the Bridgeport correctional center (center). While housed in the center's hospital unit in an isolation cell, the defendant removed his hospital gown and pushed it, along with his blanket, under his cell door. Thereafter, he tore the seam of his mattress, created a large hole and removed the mattress' stuffing. He then crawled into the mattress and wrapped it around his body, covering himself entirely.

---

[1] The defendant also claims that the court improperly denied him the opportunity to present a defense and makes three arguments in support of this contention. Because we reverse the judgment on the basis of the second claim, and the claimed errors are unlikely to arise on remand, we need not address the contention that the defendant was denied the opportunity to present a defense and address only his first and second claims.

Correction Lieutenant Timothy Cox was alerted by a department employee that the defendant had crawled into his mattress. Cox instructed uniformed correction Officers Brian Guerrera and Scott Whiteley to remove the damaged mattress from the defendant's cell. Whiteley was instructed to remove the remains of the mattress while Guerrera served as a "cover down" officer. Guerrera was assigned to position himself between Whiteley and the defendant, continuously to monitor the defendant and to protect Whiteley as he removed the mattress. While still outside the cell, Cox instructed the defendant to remove himself from the mattress and sit on the bunk frame. The defendant complied with the instruction, and Guerrera and Whiteley entered the cell. Whiteley picked up the damaged mattress and backed out of the cell. Guerrera maintained his position between Whiteley and the defendant and, still facing the defendant, started to exit the cell. The defendant, without leaving his position seated on the bunk, spat at Guerrera before he exited the cell. Saliva struck Guerrera's face and chest.

Following department protocol for such an incident, Guerrera reported to a department nurse at the center. The nurse instructed Guerrera to wipe his face with alcohol pads and complete medical and incident reports. The defendant subsequently was charged with assault of public safety personnel. The defendant represented himself at trial. After a jury trial, the defendant was found guilty and sentenced to a term of ten years incarceration, execution suspended after six years, and five years probation. This appeal followed.

I

The defendant first claims that the court improperly denied his motion for a judgment of acquittal because the state failed to introduce sufficient evidence to establish his guilt beyond a reasonable doubt. Specifically,

the defendant argues that the state failed to prove beyond a reasonable doubt that he had the specific intent to prevent Guerrera from performing his duty. We disagree.

"A claim of insufficient evidence implicates the constitutional right not to be convicted on inadequate proof. . . . We review this claim first as it may be dispositive of the appeal; see *State* v. *Padua*, 273 Conn. 138, 179, 869 A.2d 192 (2005); because a defendant convicted on insufficient evidence cannot be retried without violating the double jeopardy clause. See *Burks* v. *United States*, 437 U.S. 1, 18, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978)." (Citation omitted.) *State* v. *Sitaras*, 106 Conn. App. 493, 498–99, 942 A.2d 1071, cert. denied, 287 Conn. 906, 950 A.2d 1283 (2008).

"Review of any claim of insufficiency of the evidence introduced to prove a violation of a criminal statute must necessarily begin with the skeletal requirements of what necessary elements the charged statute requires to be proved." *State* v. *Pommer*, 110 Conn. App. 608, 613, 955 A.2d 637, cert. denied, 289 Conn. 951, 961 A.2d 418 (2008). "Once analysis is complete as to what the particular statute requires to be proved, we then review the evidence in light of those statutory requirements. Our review standard is well settled. In accordance with well established principles, appellate analysis of a claim of insufficiency of the evidence requires us to undertake a twofold task. We first review the evidence presented at the trial, construing it in the light most favorable to sustaining the jury's verdict. We then determine whether, upon the facts thus established and the inferences reasonably drawn therefrom, the jury could reasonably have concluded that the cumulative effect of the evidence established guilt beyond a reasonable doubt . . . ." (Internal quotation marks omitted.) Id.

Our analysis begins with the statute. To prove an assault of an employee of the department of correction

in violation of § 53a-167c (a) (5), the state must prove beyond a reasonable doubt that "with intent to prevent [an] employee of the Department of Correction . . . from performing his or her duties, and while such . . . employee . . . [was] acting in the performance of his or her duties . . . (5) [the defendant threw] or hurl[ed], or cause[d] to be thrown or hurled, any bodily fluid including, but not limited to, urine, feces, blood or saliva at such . . . employee . . . ."

The defendant focuses his argument on the evidence adduced of his intent to prevent Guerrera from performing his duties. The defendant's claim appears to be that although the evidence may have been sufficient to permit the jury to conclude that he intended to spit on Guerrera, it was not sufficient to permit the jury to conclude that he intended to prevent Guerrera from performing his duties. He argues that the mere act of spitting under the circumstances is insufficient evidence of an intent to prevent Guerrera from performing his duties. Finally, the defendant argues that the evidence fails to establish that he had the requisite intent to prevent Guerrera from performing his duties because his duties as a cover down officer were completed at the time of the assault. The defendant's arguments are misplaced.

"It is well established that the question of intent is purely a question of fact. . . . Intent may be, and usually is, inferred from the defendant's verbal or physical conduct. . . . Intent may also be inferred from the surrounding circumstances. . . . The use of inferences based on circumstantial evidence is necessary because direct evidence of the accused's state of mind is rarely available. . . . Intent may be gleaned from circumstantial evidence such as . . . the events leading up to and immediately following the incident. . . . Furthermore, it is a permissible, albeit not a necessary or mandatory,

inference that a defendant intended the natural consequences of his voluntary conduct." (Citation omitted; internal quotation marks omitted.) *State* v. *Porter*, 76 Conn. App. 477, 487–88, 819 A.2d 909, cert. denied, 264 Conn. 910, 826 A.2d 181 (2003). This court has stated that "[j]urors are not expected to lay aside matters of common knowledge or their own observations and experiences, but rather, to apply them to the facts as presented to arrive at an intelligent and correct conclusion." (Internal quotation marks omitted.) *State* v. *Williams*, 48 Conn. App. 361, 372, 709 A.2d 43, cert. denied, 245 Conn. 907, 718 A.2d 16 (1998).

The cumulative impact of the evidence in this case was sufficient for the jury to find beyond a reasonable doubt that the defendant was guilty of assault on a department employee. There was evidence that Guerrera was in uniform at the time of the incident, that he was carrying out his lawful duty in an orderly manner, that the defendant knew Guerrera was a department employee and that the defendant spat on Guerrera. We note that "[s]pitting itself is a physical act, as it is the application of force to the victim's body . . . . Spitting on another person is almost universally acknowledged as contemptuous and is calculated to incite others to act in retaliation." (Citations omitted; internal quotation marks omitted.) *State* v. *Hawley*, 102 Conn. App. 551, 555, 925 A.2d 1197, cert. denied, 284 Conn. 914, 931 A.2d 933 (2007). Also, it is irrelevant that Guerrera's duties as cover down officer were essentially complete at the time of the assault because under § 53a-167c, "[t]he [defendant's] act . . . does not have to be wholly or partially successful . . . [*nor must it*] *be such as to defeat or delay the performance of a duty in which the officer is then engaged.*" (Emphasis added; internal quotation marks omitted.) *State* v. *Williams*, 110 Conn. App. 778, 794, 956 A.2d 1176 (2008). The defendant must

have only *intended* to prevent Guerrera from performing his duties when the defendant spat on him.

Here, the jury reasonably could have found that when the defendant spat on Guerrera's face and chest, he intended not only that act, but also to prevent Guerrera from performing his duties. "The fact that the defendant may have been actuated by two separate intents does not diminish either one individually. Given the complexity of human behavior, the existence of the intent required for commission of a crime may be blurred by the presence of multiple intents. An intent is forward looking; it is the end in view, the object to be accomplished by the action taken, which is its criterion. . . . An action may be taken with many ends in view. Where one of them is an element of the offense, it satisfies the scienter required for the offense, notwithstanding the presence of additional and extraneous intents." (Citation omitted; internal quotation marks omitted.) *State* v. *Gore*, 96 Conn. App. 758, 765, 901 A.2d 1251 (2006), aff'd, 288 Conn. 770, 955 A.2d 1 (2008). We conclude that the evidence was sufficient for the jury to find beyond a reasonable doubt that the defendant had the specific intent to prevent Guerrera from performing his duty and, therefore, that the evidence was sufficient to support the conviction of assault of a department employee.

## II

The defendant next claims that the court improperly compelled him to wear prison clothing during trial in violation of his federal constitutional right to a fair and impartial trial[2] and Practice Book § 44-7.[3] We agree that

[2] The defendant relies on the fourteenth amendment to the United States constitution, § 1, which provides in relevant part: "No State shall . . . deprive any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

[3] Practice Book § 44-7 provides in relevant part: "An incarcerated defendant . . . shall not be required during the course of a trial to appear in court in the distinctive attire of a prisoner or convict." Although normally

the court violated the defendant's constitutional rights under the due process clause of the fourteenth amendment to the United States constitution.

The following facts and procedural history are relevant to our inquiry. The defendant was arrested on January 15, 2006, for assault of public safety personnel. At that time, he was a pretrial detainee in the center because he was unable to post a $1000 bond for an October 24, 2005 arrest for larceny in the sixth degree in violation of General Statutes § 53a-125b. On January 17, 2006, the defendant was arraigned on the charge of assault of public safety personnel in violation of § 53a-167c and bond was set at $100,000.[4] He remained incarcerated as a pretrial detainee through trial in July, 2006.

On the morning of July 21, 2006, prior to jury selection, the court stated to the defendant that "I don't know anything about you . . . besides that information which you have, but based on the charges that I see, I'm concerned and inclined probably to keep the shackles on . . . ." The defendant responded that he was not an escape risk and objected to being tried in shackles. The defendant added that "[a]lso, my attire, Your Honor, this Bozo the Clown suit is not sufficient." The court replied that "based on the nature of the charges, the jury is going to know that you are incarcerated anyway . . . . I do feel that the ankle shackles are required, and the attire, sir, based on the nature of

we will dispose of a claim on other than constitutional grounds when possible, we address the constitutional claim here because the defendant has raised it and because the dissent relies on *Estelle* v. *Williams*, 425 U.S. 501, 504, 96 S. Ct. 1691, 48 L. Ed. 2d 126 (1976). Accordingly, we will not separately review his claim under Practice Book § 44-7, which addresses the same protected interest.

[4] The defendant was also arraigned for failure to comply with a fingerprint request in violation of General Statutes §§ 29-12 and 29-17 and breach of the peace in the second degree in violation of General Statutes § 53a-181; those charges were not pursued when the state filed a substitute information charging the defendant only with assault of public safety personnel.

the charges, they are going to know you are incarcerated anyway. . . . [T]hat's how that stands."[5] After the court denied the defendant's request to be tried in civilian clothing, and before the first venire panel was brought in, the defendant again raised concerns that the prospective jurors would not understand that he was a pretrial detainee, rather than an incarcerated convict. The court directed the defendant to confer with his standby counsel about his "procedural kind of question." The record discloses that the court made no further inquiry concerning this issue during trial.

During jury selection, the court instructed the members of each venire panel not to consider the defendant's attire in assessing the evidence or in the determination of the outcome of the case. The court's entire instruction to the first venire panel was: "The defendant's attire is not to be considered in assessing the evidence or in a determination of the case." The court instructed the second panel: "I would also note that the defendant's attire is not to be considered by you in assessing the evidence or in determining the outcome of the case." The jury was selected from those two venires. The instructions given by the court prior to the jury's deliberation were completely void of any curative measure concerning the defendant's attire.

During voir dire, the defendant attempted to determine the juror's assumptions based on his attire. The court repeatedly prevented the defendant from asking jurors about their assumptions about incarcerated persons.[6]

---

[5] The defendant's handcuffs were removed before the jury entered the courtroom. Because the defendant on appeal has not challenged the court's requirement that he be tried in ankle shackles, we will not address this issue other than to note that courts must exercise their discretion to shackle defendants with care after a finding on the record that they are "reasonably necessary under the circumstances." (Internal quotation marks omitted.) *State* v. *Tweedy*, 219 Conn. 489, 505, 594 A.2d 906 (1991).

[6] Some of the court's refusals were based on the improper form of the questions posed by the pro se defendant. "[A]lthough we allow pro se

Following the luncheon recess on July 21, 2006, the defendant brought to the court's attention that he had been seen by one of the potential jurors outside of the courtroom in full restraints. The court responded that "[f]or heaven's sake, sir, you are clearly in restraints. Everyone knows you are in restraints. You are in a prison outfit. This is not a secret. You are walking around with the shackles on approaching the jurors, so, please." The court began to call in the next prospective juror but stopped and noted on the record that during voir dire, each juror could see the defendant's ankle shackles when he walked to the lectern and that he was sitting in court in a jumpsuit. The court also noted that it had instructed the jurors not to consider his attire.

The first witness, Guerrera, a correction officer, testified in uniform. Guerrera stated that he was in his uniform at the time of the alleged assault. The prosecution asked him to identify the defendant, and Guerrera stated that the defendant was wearing "[a] yellow jumper."

"A defendant may not be compelled to stand trial in prison clothes. . . . This right derives from and reinforces the presumption of innocence." (Citation omitted.) *State* v. *Prutting*, 40 Conn. App. 151, 166, 669 A.2d 1228, cert. denied, 236 Conn. 922, 674 A.2d 1328 (1996). "In order to implement that presumption, courts must be alert to factors that may undermine the fairness of the fact-finding process. In the administration of criminal justice, courts must carefully guard against dilution of the principle that guilt is to be established by probative evidence and beyond a reasonable doubt." (Internal quotation marks omitted.) Id., 165–66.

litigants some latitude, the right of self-representation provides no attendant license not to comply with relevant rules of procedural and substantive law." (Internal quotation marks omitted.) *Sakon* v. *Glastonbury*, 111 Conn. App. 242, 258 n.5, 958 A.2d 801 (2008).

"The actual impact of a particular practice on the judgment of jurors cannot always be fully determined. But [the United States Supreme Court] has left no doubt that the probability of deleterious effects on fundamental rights calls for close judicial scrutiny. . . . Courts must do the best they can to evaluate the likely effects of a particular procedure, based on reason, principle, and common human experience." (Citations omitted.) *Estelle* v. *Williams*, 425 U.S. 501, 504, 96 S. Ct. 1691, 48 L. Ed. 2d 126 (1976).

"[T]he possibility of a criminal defendant appearing before a jury dressed in prison clothes raises serious concerns about a fair trial . . . ." *State* v. *Williamson*, 206 Conn. 685, 705, 539 A.2d 561 (1988). "[T]he constant reminder of the accused's condition implicit in such distinctive, identifiable attire may affect a juror's judgment."[7] *Estelle* v. *Williams*, supra, 425 U.S. 504–505. The United States Supreme Court has stated that "the courts have refused to embrace a mechanical rule vitiating any conviction, regardless of the circumstances, where the accused appeared before the jury in prison garb. Instead, they have recognized that the particular evil proscribed is *compelling* a defendant, against his will, to be tried in jail attire."[8] (Emphasis added.) Id.,

---

[7] Although we agree that the full impact of the defendant's appearance in prison garb on the jury's decision cannot be measured, we find the following colloquy, which occurred during voir dire, informative:

"[The Defendant]: Okay. Seeing that I am incarcerated, which means I'm just incarcerated, doesn't mean that I'm in jail because I committed a crime; it just means that I am there. Can I explain to him or can the court explain to him that I am—

"[The Juror]: I understand.

"[The Defendant]: So, you understand why I am in jail or is it kind of a guess?

"[The Juror]: I understand that you are incarcerated, and this is for a separate offense."

[8] *Estelle* noted that the District Court had applied harmless error analysis to the nonobjecting defendant's claim and cited several additional cases that concern nonobjecting defendants. See *Thomas* v. *Beto*, 474 F.2d 981, 983 (5th Cir.) (no objection noted, but harmless error when "no possible inference which clouds or conflicts any essential or material fact [and] all

507. In *Estelle*, however, neither the defendant nor his counsel objected to his being tried in prison clothing. Id., 502. The court concluded, therefore, that "although the State cannot, consistently with the Fourteenth Amendment, compel an accused to stand trial before a jury while dressed in identifiable prison clothes, the failure to make an objection to the court . . . for whatever reason, is sufficient to negate the presence of compulsion . . . ." Id., 512–13.

Thus, we must determine first whether the court compelled the defendant to wear prison garb during his trial. Here, the state concedes and we agree, that the defendant timely objected to wearing prison garb during his trial.[9] See *Knott* v. *State*, 349 Md. 277, 288, 708 A.2d 288 (1998) ("defendant . . . who objects to being tried in prison attire before the jury has been impaneled is

such facts lead unerringly to guilt"), cert. denied sub nom. *Thomas* v. *Estelle*, 414 U.S. 871, 94 S. Ct. 95, 38 L. Ed. 2d 89 (1973); *Hernandez* v. *Beto*, 443 F.2d 634, 636–37 (5th Cir.) (not harmless error when nonobjecting defendant tried in identifiable prison clothes; pivotal issue was defendant's sobriety and three policemen, three children and adult testified they could smell alcohol on defendant, that he staggered and that his eyes were blurred and misty), cert. denied, 404 U.S. 897, 92 S. Ct. 201, 30 L. Ed. 2d 174 (1971); *Watt* v. *Page*, 452 F.2d 1174, 1176 (10th Cir.) (remand for determination of whether defendant, charged as habitual criminal, did not object because of trial strategy and, if not trial strategy, determination of whether, beyond reasonable doubt, his right to fair trial not prejudiced by jail clothing), cert. denied, 405 U.S. 1070, 92 S. Ct. 1520, 31 L. Ed. 2d 803 (1972); see also *Bentley* v. *Crist*, 469 F.2d 854, 856 (9th Cir. 1972) (adopting majority view that compelling accused to wear prison clothing may deny to him presumption of innocence and remanding to determine whether defendant compelled to wear prison clothing and whether resulting error harmless beyond reasonable doubt).

[9] It is also evident from the wording of the defendant's objection, "Your Honor, this Bozo the Clown suit is not sufficient," that he did not choose to appear in prison garb for tactical reasons. See *Estelle* v. *Williams*, supra, 425 U.S. 508 ("The reason for . . . judicial focus upon compulsion is simple; instances frequently arise where a defendant prefers to stand trial before his peers in prison garments. . . . [I]t is not an uncommon defense tactic to produce the defendant in jail clothes in the hope of eliciting sympathy from the jury.").

deemed to have objected in a timely manner and not to have waived his right to be tried in civilian clothing").

"Central to the right to a fair trial, guaranteed by the Sixth and Fourteenth Amendments, is the principle that one accused of a crime is entitled to have his guilt or innocence determined solely on the basis of the evidence introduced at trial, and not on grounds of official suspicion, indictment, *continued custody*, or other circumstances not adduced as proof at trial." (Emphasis added; internal quotation marks omitted.) *Holbrook* v. *Flynn*, 475 U.S. 560, 567, 106 S. Ct. 1340, 89 L. Ed. 2d 525 (1986). The United States Supreme Court "ha[s] recognized that certain practices pose such a threat to the fairness of the factfinding process that they must be subjected to close judicial scrutiny. *Estelle* v. *Williams*, [supra, 425 U.S. 503–504]. Thus, in [*Estelle*, the court] noted that where a defendant is forced to wear prison clothes when appearing before the jury, the constant reminder of the accused's condition implicit in such distinctive, identifiable attire may affect a juror's judgment. . . . Since no essential state policy is served by compelling a defendant to dress in this manner . . . [the] court went no further and concluded that the practice is unconstitutional." (Citations omitted; internal quotation marks omitted.) *Holbrook* v. *Flynn*, supra, 568.

"Whenever a courtroom arrangement is challenged as inherently prejudicial . . . the question must be . . . whether an unacceptable risk is presented of impermissible factors coming into play . . . ." (Citation omitted; internal quotation marks omitted.) Id., 570. "Some constitutional violations . . . by their very nature cast so much doubt on the fairness of the trial process that, as a matter of law, they can never be considered harmless." *Satterwhite* v. *Texas*, 486 U.S. 249, 256, 108 S. Ct. 1792, 100 L. Ed. 2d 284 (1988).

Here, the court, in response to the defendant's objection, ruled that "based on the nature of the charges, [the jury is] going to know you are incarcerated anyway," essentially finding that the defendant would not be prejudiced by appearing in front of the jury in prison garb.[10] Moreover, the record reveals that the court made no inquiry of the pro se defendant whether he had available to him, at the time, the ability to acquire civilian clothes to wear at trial. Furthermore, although the charge pending against the defendant by its very nature indicates that he was incarcerated at the time it was allegedly committed, the record discloses that at the time of his trial, he was incarcerated as a pretrial detainee unable to post bond. The United States Supreme Court has stated that "troubling is the fact that compelling the accused to stand trial in jail grab operates usually against only those who cannot post bail prior to trial. Persons who can secure release are not subjected to this condition. To impose the condition on one category of defendants, over objection, would be repugnant to the concept of equal justice embodied in the Fourteenth Amendment." *Estelle* v. *Williams*, supra, 425 U.S. 505–506. The court, on the basis of the theory that the jurors would know he was incarcerated because of the nature of the charges lodged against him, impermissibly compelled the defendant to wear prison garb during his trial.[11]

---

[10] We emphasize that, as the court noted, the defendant, who was appearing pro se, would be required to walk repeatedly in shackles to the lectern "in the yellow jumpsuit."

[11] We note that "[t]here may well have been no error if the [court] had inquired where [the defendant] had other clothes available and how much time would be required to get those clothes to the courthouse. A fully developed inquiry along [these] lines may have supported a finding that [the defendant] waived his right to appear in non-prison garb . . . ." *Knott* v. *State*, supra, 349 Md. 286. In the interest of justice, however, we urge trial courts to utilize reasonable efforts to ensure that defendants who object to wearing prison garb are able to obtain civilian clothing.

The state argues and the dissent agrees that harmless error analysis should apply when a court has improperly compelled a defendant to appear in prison garb before a jury. Although *United States* v. *Hurtado*, 47 F.3d 577 (2d Cir.), cert. denied, 516 U.S. 903, 116 S. Ct. 266, 133 L. Ed. 2d 188 (1995), indicates that there may be circumstances that permit harmless error analysis, when there is a timely objection and a defendant is compelled to wear prison garb for an entire trial, such analysis is unavailing.

In *United States* v. *Hurtado*, supra, 47 F.3d 582, the defendant was compelled to wear prison clothing during the first day of a weeklong trial. The United States Court of Appeals for the Second Circuit relied on an interpretation of *Estelle* found in *Davidson* v. *Riley*, 44 F.3d 1118, 1124 (2d Cir. 1995), applying harmless error analysis to the appearance of a defendant at trial in physical restraints: "If the reviewing court finds that the court has impermissibly delegated the decision to others or has otherwise abused its discretion, the error will not automatically lead to reversal, for harmless-error analysis applies. See, e.g. . . . *Tyars* v. *Finner*, 709 F.2d [1274] 1286 [9th Cir. 1983] (remanding to district court to 'determine whether prejudice resulted' to habeas petitioner by being forced to appear with restraints at civil-commitment trial); cf. *Estelle* v. *Williams*, [supra, 425 U.S. 506–507] (citing with apparent approval the rule, followed in the courts of appeals, that requiring a defendant to appear at a criminal trial in prison clothing is subject to harmless-error analysis)." (Citation omitted.) We disagree with this interpretation. The reference to *Estelle* merely leads to cases involving nonobjecting defendants[12] and two cases involving defendants who were tried for crimes committed while they were incarcerated. In one case, the United States Court of Appeals for the Fifth Circuit found that the

---

[12] See footnote 8.

defendant did not meet his burden of objecting and, in the other, the New York Court of Appeals reversed the judgment of the Appellate Term of the state Supreme Court, which had affirmed the trial court's judgment of conviction, on the ground that the defendant had been denied the right to be presumed innocent.[13] Accordingly, it is inappropriate to apply harmless error analysis in cases such as this, when the defendant clearly has objected at trial and the court makes no findings with respect to an essential state policy. See *Estelle* v. *Williams*, supra, 505.

We do not announce a per se rule that trial in prison clothing after an objection requires automatic reversal of a trial court's judgment of conviction. A court must make a record establishing the "essential state policy" for such precautions.[14] Furthermore, if such an interest

---

[13] *United States* v. *Henderson*, 472 F.2d 556, 557 (5th Cir.), cert. denied sub nom. *Stahl* v. *Henderson*, 411 U.S. 971, 93 S. Ct. 2166, 36 L. Ed. 2d 694 (1973), affirmed the holding in *Hernandez* v. *Beto*, 443 F.2d 634 (5th Cir.), cert. denied, 404 U.S. 897, 92 S. Ct. 201, 30 L. Ed. 2d 174 (1971), that a defendant has the *burden of objecting* to prison attire at trial. The Fifth Circuit held that (1) *the defendant had not met that burden*, (2) the trial court appropriately found that the security measures taken with regard to the defendant, who had been charged with murdering a man while incarcerated, were necessary because of his dangerousness and (3) because of the nature of the charges, the jury knew that the defendant was incarcerated at the time of the incident *and at the time of the trial. United States* v. *Henderson*, supra, 557.

*People* v. *Roman*, 35 N.Y.2d 978, 324 N.E.2d 885, 365 N.Y.S.2d 527 (1975), however, held that when there is no reason to try a defendant in prison garb, the fact that he was charged with a crime committed while he was incarcerated is irrelevant.

The jury in this case had *no reason to know* that the defendant was incarcerated at the time of trial. Indeed, the defendant was only a *pretrial detainee* at the time of the incident and at the time of trial and was, therefore, presumed innocent of whatever charges caused him to be detained. As the record indicates, there were no concerns raised about the defendant's dangerousness other than the court's brief remarks about "the charges . . . ."

[14] Although the defendant did not raise, and we do not review, an objection to his appearance in shackles in front of the jury, we note that the court's overall balancing of the defendant's appearance in front of the jury against

can be shown, the jurors must be instructed adequately that they must not consider the appearance of the defendant in prison attire in any way when determining guilt or innocence. These requirements are necessary to safeguard a defendant's rights to a fair trial and the presumption of innocence.

Even if we assume that harmless error analysis were appropriate, the state has not proven harmlessness beyond a reasonable doubt. See *Chapman* v. *California*, 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967). In *Hurtado*, the Second Circuit noted that the defendant was permitted to wear civilian clothing for the remainder of the weeklong trial after the day on which he objected and the trial court offered to cure any potential prejudice with a curative instruction. *United States* v. *Hurtado*, supra, 47 F.3d 582. In the present case, however, the defendant was compelled to wear prison garb during jury selection and the entire three days of evidence, and the court instructed the jurors only once, prior to their individual voir dire and selection, that they should not consider the defendant's attire. There was no further instruction at the end of evidence and before deliberation, nor was there any instruction that would discourage the jurors from assuming that the defendant had been convicted of some prior crime. Furthermore, no curative instruction was given by the court after a potential juror saw the defendant in the hallway in prison garb, belly chains and ankle shackles; this further indicates the court's failure to consider the prejudice to the defendant should he be tried in his "Bozo the Clown suit . . . ." Finally, the potential prejudice to the defendant in this case was especially great because the jury had to find that he had the mens rea or "guilty mind" required by the

the essential state policy calling for such precautions relies on the same concerns that the defendant not be unduly prejudiced by his appearance in front of the jury. *State* v. *Tweedy*, 219 Conn. 489, 505, 594 A.2d 906 (1991).

statute. Courts must ensure that the jury is not influenced in its determination of guilt by "grounds of official suspicion, indictment, *continued custody*, or other circumstances not adduced as proof at trial." (Emphasis added; internal quotation marks omitted.) *Holbrook* v. *Flynn*, supra, 475 U.S. 567. Although we agree with the dissent that what occurred *physically* in the defendant's cell in the center's hospital wing is not in dispute, we disagree with the proposition that the inquiry ends there. An essential element of the crime—and the only real issue in dispute—was the defendant's intent. Although the evidence was *sufficient* for the jury to infer that the defendant intended to prevent Guerrera from performing his duties, the evidence of his intent was not so "overwhelming" that there is no *reasonable possibility that the defendant's appearance in prison garb might have contributed to his conviction*. See *Chapman* v. *California*, supra, 24. On the basis of that determination and the whole record, it is evident that the defendant did not receive a fair trial.

The judgment is reversed and the case is remanded for a new trial.

In this opinion LAVINE, J., concurred.

FOTI, J., concurring in part and dissenting in part. I agree completely with part I of the majority opinion, both in its thoughtful analysis and result, that the evidence adduced at trial was sufficient to support the conviction of the defendant, Irvin D. Rose. I respectfully disagree, however, with the majority's conclusion in part II that the trial court violated the defendant's constitutional rights under the due process clause of the fourteenth amendment to the federal constitution by compelling the defendant to wear prison attire during trial. Although I agree with the majority's conclusion that the defendant was compelled impermissibly by the

court to wear prison attire during his trial, I disagree with the majority's conclusion that it is inappropriate to apply harmless error analysis to the present case and that, in any event, the error was not harmless beyond a reasonable doubt. In my opinion, the precedents from the United States Supreme Court do not support the majority's position that harmless error analysis is unavailing under these circumstances. Moreover, my review of the record indicates that the evidence of the defendant's guilt is overwhelming, and, therefore, the error visited upon him by the court impermissibly compelling him to wear prison attire throughout trial was harmless beyond a reasonable doubt.[1]

I first address the majority's contention that it is inappropriate to apply harmless error analysis to the present case. The majority declares that *Estelle* v. *Williams*, 425 U.S. 501, 96 S. Ct. 1691, 48 L. Ed. 2d 126 (1976), does not stand for the proposition that harmless error analysis applies to circumstances in which a defendant is impermissibly compelled to stand trial in prison attire. I agree that *Estelle* does not stand for this proposition because the question of whether compelling a defendant to attend trial in prison attire could result in harmless error was not before the court. The question before the court in *Estelle* was "whether an accused who is compelled to wear identifiable prison clothing at his trial by a jury is denied due process or equal protection of the laws"; id., 502; in other words, had a constitutional error occurred at all. The court concluded that "[a]lthough the State cannot, consistently with the Fourteenth Amendment, compel an accused to stand trial before a jury while dressed in

---

[1] "[Our Supreme Court] has held in a number of cases that when there is independent overwhelming evidence of guilt, a constitutional error would be rendered harmless beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Davis*, 109 Conn. App. 187, 197, 951 A.2d 31, cert. denied, 289 Conn. 929, 958 A.2d 160 (2008).

identifiable prison clothes, the failure to make an objection to the court . . . is sufficient to negate the presence of compulsion necessary *to establish a constitutional violation*." (Emphasis added.) Id., 512–13. The court also found that there was no compulsion in *Estelle* because the defendant did not timely object, and, therefore, there was no error.[2] The court simply did not address the applicability of harmless error analysis because the error was not established.[3] This, however, does not end the inquiry.

Although the applicability of harmless error analysis to circumstances in which a defendant is impermissibly compelled to attend trial in prison attire has not been addressed directly by this court or our Supreme Court, state and federal appellate courts confronting this issue have approved of applying such analysis. As the majority correctly points out, the United States Court of Appeals for the Second Circuit in *United States* v. *Hurtado*, 47 F.3d 577, 581 (2d Cir.), cert. denied, 516 U.S. 903, 116 S. Ct. 266, 133 L. Ed. 2d 188 (1995), declared that "[e]ven where a defendant is compelled to wear prison clothes at trial, however, that constitutional error is subject to harmless error analysis." The United States Court of Appeals for the Seventh Circuit has applied harmless error analysis in this context as well. See *Whitman* v. *Bartow*, 434 F.3d 968, 971 (7th Cir.), cert.

---

[2] In *Estelle*, the United States Supreme Court stated: "Nothing in this record . . . warrants a conclusion that [the] respondent was compelled to stand trial in jail garb or that there was sufficient reason to excuse the failure to raise the issue before trial." *Estelle* v. *Williams*, supra, 425 U.S. 512.

[3] The court did counterpoise this result, a finding of *no error* when a defendant was not compelled to be tried in jail attire, with the cases in footnote 8 of the majority of this opinion, cases that applied harmless error analysis for nonobjecting, therefore, noncompelled defendants. The court did this, in my opinion, to clarify that when there is no compulsion, there is no error and *not*, as those cited cases had concluded, that any error was *harmless*. The court was supplying the standard for establishing the error and rejecting the need for the application of harmless error analysis in cases in which compulsion is not found.

denied, 547 U.S. 1199, 126 S. Ct. 2883, 165 L. Ed. 2d 908 (2006); see also *Fernandez* v. *United States*, 375 A.2d 484, 485–86 (D.C. 1977) (applying harmless error when defendant compelled to attend trial in prison attire). The Court of Appeals of Maryland[4] in *Knott* v. *State*, 349 Md. 277, 292, 708 A.2d 288 (1998), applied harmless error analysis to this issue in factually comparable circumstances, as did the Supreme Court of Pennsylvania in *Commonwealth* v. *Moore*, 534 Pa. 527, 544–45, 633 A.2d 1119 (1993), cert. denied, 513 U.S. 1114, 115 S. Ct. 908, 130 L. Ed. 2d 790 (1995), and the Supreme Court of Louisiana in *State* v. *Brown*, 585 So. 2d 1211, 1213 (La. 1991). See also *People* v. *Steinmetz*, 287 Ill. App. 3d 1, 6–7, 678 N.E.2d 89 (applying harmless error when defendant compelled to attend trial in prison attire), leave to appeal denied, 173 Ill. 2d 542, 684 N.E.2d 1341 (1997). I agree with those courts that the application of harmless error analysis is appropriate in circumstances in which a defendant is impermissibly compelled to attend trial in prison attire.

Moreover, the United States Court of Appeals for the Sixth Circuit declared that "there *is* [United States] Supreme Court precedent holding that harmless error analysis *should* apply in cases where the courtroom atmosphere hints at a defendant's dangerousness or guilt." (Emphasis in original.) *Ruimveld* v. *Birkett*, 404 F.3d 1006, 1013 (6th Cir. 2005). Citing *Holbrook* v. *Flynn*, 475 U.S. 560, 572, 106 S. Ct. 1340, 89 L. Ed. 2d 525 (1986), the Sixth Circuit concluded that "[t]he [United States Supreme] Court [has] made clear that a particular trial practice ought to be examined as to whether it prejudiced the defendant's case. [Furthermore, this] is in line with the majority of other constitutional errors considered by the Supreme Court." *Ruimveld* v. *Birkett*, supra, 1013. I agree and, therefore, would apply harmless error analysis in this case.

---

[4] The Court of Appeals is the highest tribunal in Maryland.

Additionally, the United States Supreme Court has "recognized that most constitutional errors can be harmless [and has] found an error to be structural, and thus subject to automatic reversal, only in a very limited class of cases." (Citations omitted; internal quotation marks omitted.) *Neder* v. *United States*, 527 U.S. 1, 8, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999).[5] I also take issue with the majority's apparent case-by-case approach to the applicability of harmless error analysis to this, or any, constitutional error. The United States Supreme Court expressly has rejected such an approach to errors of a constitutional magnitude. In *Neder*, the court was faced with a "[p]etitioner's submission [that] import[ed] into the initial structural-error determination (i.e., whether an error is structural) a case-by-case approach that [was] more consistent with [the court's] traditional harmless error inquiry (i.e., whether an error is harmless)." Id., 14. Although the majority admittedly does "not announce a per se rule that trial in prison clothing after an objection requires automatic reversal," it also concluded that "it is inappropriate to apply harmless error analysis in cases such as [the present case]." The majority, therefore, apparently endorses a case-by-case approach to the application of harmless error analysis to situations in which a defendant was compelled impermissibly to attend trial in prison attire. "Under [United States Supreme Court] cases, a constitutional error is

---

[5] In *Neder*, the court cited the following examples it had determined to be structural errors: "*Johnson* v. *United States*, 520 U.S. 461, 468 [117 S. Ct. 1544, 137 L. Ed. 2d 718] (1997) (citing *Gideon* v. *Wainwright*, 372 U.S. 335 [83 S. Ct. 792, 9 L. Ed. 2d 799] (1963) (complete denial of counsel); *Tumey* v. *Ohio*, 273 U.S. 510 [47 S. Ct. 437, 71 L. Ed. 749] (1927) (biased trial judge); *Vasquez* v. *Hillery*, 474 U.S. 254 [106 S. Ct. 617, 88 L. Ed. 2d 598] (1986) (racial discrimination in selection of grand jury); *McKaskle* v. *Wiggins*, 465 U.S. 168 [104 S. Ct. 944, 79 L. Ed. 2d 122] (1984) (denial of self-representation at trial); *Waller* v. *Georgia*, 467 U.S. 39 [104 S. Ct. 2210, 81 L. Ed. 2d 31] (1984) (denial of public trial); *Sullivan* v. *Louisiana*, 508 U.S. 275 [113 S. Ct. 2078, 124 L. Ed. 2d 182] (1993) (defective reasonable-doubt instruction))." *Neder* v. *United States*, supra, 527 U.S. 8.

either structural or it is not." *Neder* v. *United States*, supra, 14. Therefore, I find that the majority is misguided in its apparent endorsement of a case-by-case approach to the application of harmless error analysis.

Last, my review of the record reveals that the court's compelling the defendant to wear prison attire throughout trial, even though erroneous, was harmless beyond a reasonable doubt. "The harmless error doctrine is rooted in the fundamental purpose of the criminal justice system, namely, to convict the guilty and acquit the innocent. . . . Therefore, whether an error is harmful depends on its impact on the trier of fact and the result of the case." (Citation omitted.) *State* v. *Daugaard*, 231 Conn. 195, 212, 647 A.2d 342 (1994), cert. denied, 513 U.S. 1099, 115 S. Ct. 770, 130 L. Ed. 2d 666 (1995). "As the United States Supreme Court said in *Chapman* v. *California* [386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)], before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt. [Our Supreme Court] has held in a number of cases that when there is independent overwhelming evidence of guilt, a constitutional error would be rendered harmless beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Davis*, 109 Conn. App. 187, 197, 951 A.2d 31, cert. denied, 289 Conn. 929, 958 A.2d 160 (2008).

As the majority correctly notes, intent is the only real issue in dispute. Evidence of intent, therefore, that was not only sufficient to support the defendant's conviction had to be present, but for our purposes here, that evidence must be overwhelming to find the error at trial harmless. See id. Before I summarize the relevant evidence properly before the jury, however, I underscore what was already pointed out by the majority that "[i]t is well established that the question of intent is purely a question of fact. . . . Intent may be, and usually is,

inferred from the defendant's *verbal or physical con-duct. . . . Intent may also be inferred from the sur-rounding circumstances. . . .* The use of inferences based on circumstantial evidence is necessary because direct evidence of the accused's state of mind is rarely available. *. . . Intent may be gleaned from circum-stantial evidence such as . . . the events leading up to and immediately following the incident. . . .* Fur-thermore, it is a permissible, albeit not a necessary or mandatory, inference that a defendant intended the natural consequences of his voluntary conduct." (Cita-tion omitted; emphasis added; internal quotation marks omitted.) *State* v. *Porter*, 76 Conn. App. 477, 487–88, 819 A.2d 909, cert. denied, 264 Conn. 910, 826 A.2d 181 (2003). With this in mind, I now turn to the evidence properly before the jury.

An incident report that was entered into evidence as a full exhibit details effectively the surrounding circum-stances and events leading to and immediately follow-ing the incident. Just prior to the incident, the defendant "was naked in his cell due to [his] shoving his . . . gown and blanket underneath the cell door [sometime earlier and] was ripping the seam of the mattress." This behavior led to the intervention by department of correction officers and the spitting incident that the majority relates. After this incident, "[a]round ten minutes later, [the defendant] was pacing [in] his cell when suddenly he went to his cell door and started to urinate everywhere. A short time later . . . [the defen-dant] wet some toilet paper and tried to cover the cam-era monitor. . . . [H]e then climbed up the wall and shook the camera trying to break it. . . . [H]e [then] grabbed the wet toilet paper, climbed the up the wall again and placed it on the camera monitor." The report goes on to indicate that another department of correc-tion intervention ensued resulting in the physical restraint of the defendant.[6]

---

[6] The state also presented other independent, overwhelming evidence of the defendant's guilt. There was uncontested documentary and testimonial

These factors lead me to conclude that in light of our prevailing standards, evidence that the defendant, when he spit on correction Officer Brian Guerrera, acted "with intent to prevent [an] employee of the Department of Correction . . . from performing his or her duties"; General Statutes § 53a-167c (a); was not only sufficient to support the conviction but overwhelming as well. As a result, I conclude that the defendant's being compelled to wear prison attire during trial amounted to error that was harmless beyond a reasonable doubt and did not violate the defendant's constitutional rights.

For all of the foregoing reasons, I respectfully dissent in part. I would affirm the judgment of conviction.

evidence that Officer Brian Guerrera was an identifiable employee of the department of correction in the lawful performance of his duty when the assault took place. The state presented the testimony of two eyewitnesses to the assault on Guerrera. Each testified that the defendant spat on Guerrera during the removal of the damaged mattress from the defendant's cell. Also, there was the extensive documentary evidence before the jury, amounting to some sixty plus pages of department of correction reports, detailing the assault on Guerrera and subsequent events involving the defendant's incarceration. See *State* v. *Yates*, 174 Conn. 16, 18–19, 381 A.2d 536 (1977) (potential prejudice of witnesses testifying in prison attire ameliorated by testimony of present incarceration).